PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1918
_____

UNITED STATES OF AMERICA

v.

AKEEM ABDUL CALDWELL,
                              Appellant
_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-12-cr-00111-001
District Judge: The Honorable Donetta W. Ambrose
_____

Argued: May 13, 2014

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit
Judges*


(Filed: July 24, 2014)

Rebecca R. Haywood, Esq.
Michael L. Ivory, Esq.     [ARGUED]
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Counsel for Appellee*

Lisa B. Freeland, Esq.
Renee Pietropaolo, Esq.   [ARGUED]
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
        *Counsel for Appellant*

————————————————

OPINION

————————————————


SMITH, *Circuit Judge.*

Akeem Caldwell brings this appeal following his conviction of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Caldwell contends that he is entitled to a new trial because the District Court (1) erroneously admitted evidence that he had two prior convictions for unlawful firearm possession and (2)

2

improperly excluded a third-party's out-of-court statement admitting responsibility for the offense. Because we conclude that admission of Caldwell's prior convictions was improper, we will vacate the judgment of the District Court and remand for further proceedings.

## I.

On January 24, 2012, at approximately 11:45 p.m., three detectives with the Pittsburgh Police Department—Judd Emery, Robert Smith, and Mark Adametz—were on patrol in an unmarked police cruiser near the Northview Heights housing projects. As they approached the intersection of Penfort Street and Mount Pleasant Road, they spotted Akeem Caldwell and Darby Tigney walking side-by-side in the direction of the police car. When the detectives' car turned left onto Mount Pleasant Road, Detective Emery observed Caldwell remove a black firearm from his waistband and hold it behind Tigney's back. Emery immediately alerted the other detectives to the presence of the weapon and brought the cruiser to a stop. He then jumped out and ran to the rear of the car, drew his weapon, and yelled: "Pittsburgh Police. Drop the gun."

Emery later testified that, upon his command, Caldwell released the firearm, letting it fall to the ground directly between Tigney's legs. Emery then directed Caldwell and Tigney to get on the ground, and the other detectives placed them in handcuffs. As he was being

placed in custody, Caldwell emphatically insisted that he was not the one who had been holding the gun, exclaiming: "That's not my gun. You didn't see me with a gun." App. 402.

Detective Smith, who was sitting in the front passenger seat at the time of the encounter, testified that he saw Caldwell "brandish" the weapon and later release the gun behind Tigney's back. Detective Adametz, who was seated in the rear passenger seat, testified that he could not see the gun in Caldwell's hands because Caldwell's arm was obstructed by Tigney's body. However, he stated that both of Tigney's hands were visible and empty when the gun fell to the ground.

Caldwell provided his identity to the detectives, and a records search revealed that he had a prior criminal record. After discovering that Caldwell was a convicted felon who was not permitted to possess a firearm, the detectives transported him to the Allegheny County Jail for processing. Tigney, on the other hand, identified himself as "Shakur Jackson." The detectives, unaware that Tigney had falsely identified himself, released him into the custody of a woman who claimed to be his aunt after they determined that "Shakur Jackson" did not have a criminal record.

Caldwell was charged under 18 U.S.C. § 922(g)(1) with possession of a firearm by a convicted felon. On April 16, 2012, shortly after that charge was filed, Tigney

4

contacted Caldwell's defense counsel and claimed that he (Tigney) was the one who had possessed the firearm the evening of Caldwell's arrest and that he intended to turn himself in to prosecutors. During a follow-up interview with a defense investigator, Tigney asserted that the gun had fallen from his pants and that Caldwell did not know about the gun. Tigney also admitted that he lied to the officers about his identity. After providing this statement to Caldwell's defense team, Tigney retained independent counsel and asserted his Fifth Amendment privilege not to testify.

The case against Caldwell proceeded to trial on November 14, 2012. The result was a mistrial after a jury was unable to reach a verdict. *United States v. Caldwell*, No 2:12-cr-0111 (W.D. Pa.), Docket Nos. 72, 112. A second trial commenced on December 4, 2012. This time, the jury returned a verdict finding Caldwell guilty of the § 922(g)(1) offense.[1]

Caldwell's theory at trial was that Tigney—and

---

[1] Although the second trial is the operative proceeding for purposes of this appeal, the parties and the District Court repeatedly referenced and incorporated remarks from the earlier proceeding when arguing the evidentiary questions at the second trial. Accordingly, we consider the jointly submitted portions of the record from both the first proceeding as well as the second trial.

only Tigney—possessed the gun on the evening of his arrest. In support of this claim, Caldwell repeatedly emphasized that Tigney provided a false name to the detectives at the scene, and that this indicated a consciousness of guilt. Caldwell also sought to admit, as a statement against interest, Tigney's out-of-court admission to defense investigators that he had possessed the gun. The District Court initially granted Caldwell's motion *in limine* requesting that he be allowed to introduce Tigney's statement. On the Government's motion for reconsideration, however, the Court changed its decision on the morning of the first trial, holding that the statement lacked the corroborating circumstances necessary to satisfy Federal Rule of Evidence 804(b)(3). On the morning of the second trial, prosecutors informed the Court and defense counsel that Tigney had recanted his earlier admission. Noting that Tigney's decision to disavow his prior statement bolstered its ruling from the first proceeding, the Court again held the statement to be inadmissible.

In addition to arguing that Tigney possessed the firearm, Caldwell sought to impeach the credibility of the testifying detectives. Caldwell theorized that the detectives targeted him rather than Tigney as the possessor of the gun because he had a prior felony conviction, thus subjecting him to federal charges, whereas Tigney, a juvenile, was subject to only an adjudication of delinquency. Caldwell also pointed out

6

that, despite having done so in other cases, investigators never sought to obtain surveillance footage of the Northview Heights scene of his encounter with police from the Housing Authority. Such evidence, he maintained, would have shown that Tigney possessed the gun.

Caldwell testified in his defense at both trials. He claimed that, at the time he was stopped by the detectives, he was holding a cell phone in his hand—not a gun—and was talking to his girlfriend, Tiffany Dungan. Dungan corroborated this claim by testifying that she was on the phone with Caldwell when the police stopped him. She also presented phone records showing that, around the time of the arrest, she participated in a seventeen minute phone call with a number that she claimed belonged to Caldwell. Caldwell also offered the testimony of a bystander, Manly Banks, who stated that he witnessed an officer take a cell phone out of Caldwell's hand and hang up the phone.

In the course of cross-examining Caldwell during the first trial, the Government sought to introduce, under both Rule 404(b) and Rule 609(a)(1)(B) of the Federal Rules of Evidence, two prior convictions for unlawful firearm possession. One of Caldwell's "priors" was a federal conviction for possession of a firearm by a convicted felon—the very offense for which he was

being tried.[2] With respect to Rule 404(b), the Government argued the evidence was admissible to show "knowledge and absence of mistake or accident." App. 313. Caldwell's counsel countered that absence of mistake and knowledge were irrelevant because the only issue in the case was whether Caldwell actually possessed the gun. Indeed, he conceded that "[w]hoever possessed [the gun] knew it."[3] App. 317.

The District Court was initially skeptical of the Government's claim that the evidence was admissible under Rule 404(b). *See* App. 313 ("What do you think he said that would make it more than propensity evidence? What do you think he says that goes to knowledge and

---

[2] Caldwell filed pretrial motions *in limine* in advance of both trials seeking to exclude evidence of his prior convictions. In both instances, the District Court denied the motions as premature, noting its intention to "rule on the admissibility of [the] evidence at trial after considering its factual context." App. 72; *see also* App. 351–52.

[3] This statement was consistent with Caldwell's position throughout both trials. *See* App. 119 (offering to "stipulate that *whoever* possessed the firearm on January 24, 2012 also had the requisite knowledge and intent to possess that firearm"); App. 600–01 (arguing to the jury at closing that "whoever possessed that gun had the knowledge that it was a gun and intended to possess it. It's who possessed it [that] is the question. Not knowledge and intent").

intent? He's saying he never had a gun. . . . He's not saying I had it and it was somebody else's."). After a short recess, however, the Court ruled in favor of the Government: "[I]n terms of 404(b) evidence, I agree with the government that knowledge and intent is an issue here and I am going to allow [the prosecutor] to question Mr. Caldwell about his prior convictions for firearm violations." App. 318–19. The Court continued:

> I understand it's prejudicial, but when you have a situation where this is a complete credibility determination, Mr. Caldwell has testified in a manner diametrically opposed to those of the police officers and I do believe it is probative for knowledge and intent and that that probative value outweighs the prejudicial effect, which I acknowledge is prejudicial.

App. 319. Defense counsel immediately objected to the Court's reference to Caldwell's "credibility," which is generally not a concern in the 404(b) inquiry. This, in turn, prompted the Court to clarify its position: "So the record is clear, I'm not saying . . . it is admissible for credibility. I'm saying it's admissible for knowledge and intent . . . ." App. 319–20.

This review process was more streamlined when the second trial took place. The Government again sought to introduce Caldwell's prior convictions during cross-

examination. But instead of explaining the basis for admissibility, the prosecutor simply asked for "a ruling on which convictions . . . would be permissible for the Government to inquire as to the Defendant about." App. 525. Recalling the Government's proffer and arguments from the previous trial, the Court again ruled the evidence was admissible:

> I know what your arguments are, not only because I've heard them before, but because they've been incorporated into your written submissions. . . . [O]n the prior convictions for illegal possession of firearms, when the Defendant, as here, is charged with a specific intent crime, the knowing possession of a firearm unlawfully, the Government may present other acts or evidence to prove intent and knowledge, and I find that Mr. Caldwell has put his knowledge and intent to possess a firearm at issue by claiming innocence.

App. 525–26. The Court then discussed Rule 403 balancing, stating "not only are [Caldwell's prior convictions] admissible under 404(b), but because knowledge and intent are at issue here, they are more probative than prejudicial. I find that the probative value outweighs any prejudicial effect as well as to their

admissibility."[4] App. 527.

At the close of the second trial, the jury returned a verdict convicting Caldwell of the charged offense. The District Court sentenced Caldwell to 77 months in prison and three years of supervised release. Caldwell timely filed this appeal.[5]

## II.

Caldwell's primary argument is that the District Court erred in admitting his two prior convictions for unlawful weapons possession. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). "We exercise plenary review, however, of [the district court's] rulings to the extent they are based on a legal interpretation of the Federal Rules of Evidence." *Id.* (quoting *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997)). This includes plenary review over "whether evidence falls within the scope of Rule 404(b)." *United States v. Smith*, 725 F.3d 340, 344–45 (3d Cir. 2013) (quoting *Green*, 617 F.3d at 239).

---

[4] The Court initially neglected to balance the probative value against the prejudicial effect, but later conducted the Rule 403 balancing after the Government requested that the test be made explicit "[f]or the record." App. 526.

[5] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C § 1291.

We have repeatedly emphasized that Rule 404(b) must be applied with careful precision, and that evidence of a defendant's prior bad acts is not to be admitted unless both the proponent and the District Court plainly identify a proper, non-propensity purpose for its admission. *See United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013) (citing *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992)). For the reasons discussed below, we conclude the evidence of Caldwell's prior convictions was not admitted for a proper purpose.

## A.

It is indisputable that evidence of Caldwell's prior convictions satisfies Rule 401's definition of relevant evidence, at least to the extent a criminal defendant's prior offenses make it more likely he would commit the same crime again. As our Supreme Court long ago explained, "logically speaking, it is quite clear that an antecedent bad character would form quite as reasonable a ground for the presumption and probability of guilt as a previous good character lays the foundation of innocence." *Michelson v. United States*, 335 U.S. 469, 476 n.9 (1948) (citation omitted); *see also* 1 Wigmore on Evidence § 55 (3d ed. 1940) ("A defendant's character, then, as indicating the probability of his doing or not doing the act charged, is essentially relevant.").

Yet notwithstanding the logical relevance of this evidence, Rule 404(b) provides that "[e]vidence of a

crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This rule reflects the longstanding concern that evidence of prior bad acts, when offered only to show the defendant's propensity to commit the charged crime, "is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Sampson*, 980 F.2d at 886 (quoting *Michelson*, 335 U.S. at 475).

Derived from English common law, Rule 404(b)'s instruction that prior criminal acts are not admissible to show a defendant's propensity to commit the charged offense is now well-entrenched in our American jurisprudence. But such prior act evidence was not always prohibited. Indeed, early English courts did not recognize a rule excluding evidence of prior bad acts, and instead evaluated the admissibility of such acts according to the ordinary test of relevance. *See* Julius Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv. L. Rev. 954, 958–59 (1933). Prior act evidence was easily admissible under this approach, "even if the only theory of relevance was to establish the defendant's character and, in turn, use character as circumstantial proof of conduct." 1 Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 2:25 (2009).

Over time, however, courts and commentators came to appreciate the uniquely prejudicial impact that prior bad act evidence has on a jury. By the turn of the nineteenth century, British and American courts were in agreement that prior act evidence introduced for the limited purpose of showing a defendant's propensity to commit the charged offense should be excluded. *Stone*, *supra*, at 958. The evidence in question, however, could still be introduced "if [it] was relevant for any purpose other than, or in addition to, a suggestion of a general propensity to commit the [charged] crimes." Kenneth J. Melilli, *The Character Evidence Rule Revisited*, 1998 B.Y.U. L. Rev. 1547, 1558 (1998). Non-propensity purposes for which evidence was admitted included, *inter alia*, proof of knowledge, intent, motive, and identity. *Stone*, *supra*, at 966.

Throughout the nineteenth century and into the twentieth, American courts differed as to whether the common law rule was "exclusionary" or "inclusionary." *Davis*, 726 F.3d at 441 (citing *United States v. Long*, 574 F.2d 761, 765–66 (3d Cir. 1978)). Both of these descriptors can be misleading. To be sure, no one doubted that evidence relevant only for the limited purpose of showing a defendant's general propensity to commit the charged offense was inadmissible. Instead, the debate concerned whether the list of previously recognized non-propensity purposes was exhaustive (or "exclusive"), or whether *any* non-propensity purpose,

14

even if not previously recognized, could support admission of the prior act evidence (the "inclusive" approach). *See* David P. Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events* §4.3.2, at 224 (2009) ("[T]he real question . . . is whether the courts actually confine admissibility to a set of enumerated purposes.").

The matter was settled in 1975 with the adoption of the Federal Rules of Evidence. After noting its general prohibition on prior act evidence to prove a person's character, the text of new Rule 404(b)(2) provided that prior act evidence "may be admissible for another purpose, *such as* proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2) (emphasis added). By introducing the list of permissible purposes with the words "such as," the drafters made clear that the list was not exclusive or otherwise limited to a strictly defined class.

We have on occasion noted that Rule 404(b) adopted an inclusionary approach. *See, e.g.*, *Davis*, 726 F.3d at 441. Our use of the term "inclusionary" merely reiterates the drafters' decision to not restrict the non-propensity uses of evidence. It does not suggest that prior offense evidence is presumptively admissible. On this point, let us be clear: Rule 404(b) is a rule of general exclusion, and carries with it "no presumption of admissibility." 1 Christopher B. Mueller & Laird C.

Kirkpatrick, *Federal Evidence* § 4:28, at 731 (4th ed. 2013) [hereinafter Mueller, *Federal Evidence*]. The Rule reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is. And in recognition that prior offense evidence is generally more prejudicial than probative, Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose.

The "permitted uses" of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to this rule of exclusion. As is generally the case with exceptions, the party seeking to admit evidence under Rule 404(b)(2) bears the burden of demonstrating its applicability. Our opinions have repeatedly and consistently emphasized that the burden of identifying a proper purpose rests with the proponent of the evidence, usually the government. *See, e.g.*, *Davis*, 726 F.3d at 442 (discussing proponent's burden to identify a proper purpose and explain how the proffered evidence is relevant to that purpose); *Sampson*, 980 F.2d at 887 (same). This hurdle is not insurmountable, but it must be satisfied before the exception can be invoked.

There are four distinct steps that must be taken before evidence is admissible for a non-propensity purpose under Rule 404(b)(2). First, the proponent must identify a proper 404(b) purpose for admission (such as knowledge or intent) that is "at issue" in, or relevant to,

16

the case. In evaluating whether an identified purpose is "at issue," courts should consider the "material issues and facts the government must prove to obtain a conviction." *Sampson*, 980 F.2d at 888. We stress that "a proponent's incantation of the proper uses of [prior act] evidence . . . does not magically transform inadmissible evidence into admissible evidence." *United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999). Rather, the proponent must identify a specific purpose that "is of consequence in determining the action." Fed. R. Evid. 401(b).

Once the proponent identifies a non-propensity purpose that is "at issue" in the case, the proponent must next explain how the evidence is relevant to that purpose. This step is crucial. The task is not merely "to find a pigeonhole in which the proof might fit," but to actually demonstrate that the evidence "prove[s] something other than propensity."[6] Mueller, *Federal Evidence* § 4:28, at 731.

As we have frequently stated, "[i]n proffering such evidence, the government must explain how it fits into a

---

[6] We emphasize that steps one and two are distinct inquiries. The first step requires the proponent to identify a proper purpose that is pertinent to the case, whereas the second step requires the evidence tend to establish the identified purpose. Both must be satisfied before evidence may be admitted under Rule 404(b).

17

chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Davis*, 726 F.3d at 442 (citing *Sampson*, 980 F.2d at 887). Despite our repeated instructions in this area, some proponents of Rule 404(b) evidence still fail to follow this course. *See United States v. Givan*, 320 F.3d 452, 466 (3d Cir. 2003) (McKee, J., dissenting) (stating that the directive to articulate how proffered evidence is relevant for a non-propensity purpose is "so often honored in the breach that it resonates about as loudly as the proverbial tree that no one heard fall in the forest"). To be sure, the proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences, and failure to exclude such evidence constitutes reversible error. *See Sampson*, 980 F.2d at 888.

To ensure that protections afforded by Rule 404(b) are not ignored, we also require care and precision by the district court in ruling on the admission of prior act evidence for a non-propensity purpose. "The district court, if it admits the evidence, must in the first instance, rather than the appellate court in retrospect, articulate reasons why the evidence also goes to show something other than character." *Sampson*, 980 F.2d at 888. "The reasoning should be detailed and on the record; a mere recitation of the purposes in Rule 404(b)(2) is insufficient." *Davis*, 726 F.3d at 442.

In reviewing a proffer of relevance, the court

18

should remain mindful that "[r]elevance is not an inherent characteristic" of the purposes under Rule 404(b). *Sampson*, 980 F.2d at 888 (citation omitted). Indeed, "evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered," or only relevant in some impermissible way. *Morley*, 199 F.3d at 133. "Relevance is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." *Sampson*, 980 F.2d at 888. That is why our decisions are so emphatic in requiring the proponent and the trial judge to articulate, with precision, a chain of inferences that does not contain a propensity link.

Importantly, the district court's job is not complete once it finds the proponent has shown that the evidence is relevant for a proper, non-propensity purpose. Under the third step of our analysis, the court must evaluate pursuant to Rule 403 whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence. *Sampson*, 980 F.2d at 889 (reversing because Rule 403 balancing not apparent from the record); *Smith*, 725 F.3d at 349 (same). This balancing requires great care on the part of the district court, "because few categories of evidence bring greater risk of prejudice to the accused under Rule 403." Mueller, *Federal Evidence*

§ 4:28, at 731.

Finally, and if the defendant requests it, the court must provide a limiting instruction, which advises the jury that the evidence is admissible for a limited purpose and may not be considered in another manner. *Davis*, 726 F.3d at 445. If such a request is made, the court should provide the instruction at the time the evidence is admitted. *Id.*

To summarize, Rule 404(b) provides that prior act evidence is inadmissible unless the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested. *Davis*, 726 F.3d at 441 (citing *United States v. Huddleston,* 485 U.S. 681, 691–92 (1988). With these principles in mind, we turn to whether the evidence of Caldwell's prior convictions was properly admitted. We address the four factors *seriatim*.

## B.

### (1)

We first consider whether the government offered Caldwell's prior convictions for an acceptable, non-propensity purpose—*i.e.*, one that is "at issue" in, or

20

relevant to, the prosecution. At trial, the government argued that the evidence was "admissible to show knowledge and absence of mistake or accident." App. 313. The District Court ultimately concluded the evidence was admissible "to prove intent and knowledge," because Caldwell "put his knowledge and intent to possess a firearm at issue by claiming innocence." App. 525–26. Because "knowledge" was the only purpose mentioned by both the Government and the Court, we focus on whether that was a permissible purpose under Rule 404(b).[7]

---

[7] The District Court correctly refused to admit the prior act evidence to show "absence of mistake or accident" because this Rule 404(b) purpose was not at issue in the case. The Government did not present any reason why it would have been necessary to prove that Caldwell's possession was not accidental, nor did Caldwell contend that he mistakenly possessed the gun. The other purpose mentioned by the Court—"intent"—is likewise a non-issue. Caldwell was charged under 18 U.S.C. § 922(g)(1), which makes it unlawful for a convicted felon to knowingly possess a firearm. *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 422 (2012). The Government was not required to prove that Caldwell intentionally possessed the gun. Nor did Caldwell contend that he lacked such intent. *See United States v. Linares*, 367 F.3d 941, 948 (D.C. Cir. 2004) (holding prior act evidence not admissible to show intent in a trial for unlawful firearm possession by convicted felon because § 922(g)(1) does not require

21

In determining whether an identified purpose is at issue in a case, we begin by considering the "material issues and facts the government must prove to obtain a conviction." *Sampson*, 980 F.2d at 888. We have explained that "the government must . . . proffer a logical chain of inference[s] *consistent with its theory of the case*." *Id.* (emphasis added). This makes sense in light of the definition of relevant evidence. Evidence is relevant if it has a tendency to make more or less probable a fact that "*is of consequence* in determining the action." Fed. R. Evid. 401(b) (emphasis added).

The Government charged Caldwell with violating 18 U.S.C. § 922(g)(1), which makes it unlawful for a convicted felon to "knowingly possess[] [a] firearm." *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 422 (2012). The government can prove possession of a firearm for purposes of §922(g)(1) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was found (constructive possession). *See United States v. Jones*, 484 F.3d 783, 788 (5th Cir. 2007). At trial, the prosecution offered evidence that two detectives directly observed Caldwell physically remove the gun from his

government to prove intentional possession). Accordingly, we reject both of these purposes as grounds for admitting the evidence under Rule 404(b).

22

waistband and hold it behind Tigney's back. A third detective testified that he observed conduct consistent with this version of events. There was no contention that Caldwell exercised dominion over an area where the gun was later found. Rather, the Government's theory was purely one of actual possession, and the jury was accordingly instructed only on this theory. App. 555 (instructing the jury that "[t]he term possess means to exercise authority, dominion or control over an object," and making no mention of control over an area where an object was found).

Because the Government proceeded solely on a theory of actual possession, we hold that Caldwell's knowledge was not at issue in the case. Although 18 U.S.C. § 922(g)(1) criminalizes the "knowing" possession of a firearm by a convicted felon, a defendant's knowledge is almost never a material issue when the government relies exclusively on a theory of actual possession. Indeed, absent unusual circumstances (such as when a defendant claims he did not realize the object in his hand was a gun), the knowledge element in a felon-in-possession case will necessarily be satisfied if the jury finds the defendant physically possessed the firearm. *See United States v. Linares*, 367 F.3d 941, 946–47 (D.C. Cir. 2004) (stating that no reasonable jury in an actual possession case would acquit a defendant "based on the belief that the government proved possession but failed to prove knowledge"). This is true here, and

23

Caldwell conceded as much. His counsel repeatedly noted that if the jury found that Caldwell possessed the gun, then it must also find that his possession was knowing.[8]

In *United States v. Lee*, 612 F.3d 170 (3d Cir. 2010), we recognized that, in a trial for a violation of § 922(g)(1), knowledge and intent are not proper 404(b) purposes where the prosecution is based on the defendant's actual possession of the firearm. The defendant in *Lee* was pulled over pursuant to a routine traffic stop. While approaching Lee's window, the officer scanned the back seat and observed a large black coat that appeared to be wrapped around a long narrow object. *Id.* at 174. Immediately suspicious, the officer commanded Lee to raise his hands, but instead, Lee drove off. *Id.* Investigators later found the black coat and an AK-47 assault rifle about a mile down the road near where Lee abandoned his vehicle. *Id.* at 175. At trial, Lee

---

[8] *See* App. 119 (offering to "stipulate that *whoever* possessed the firearm on January 24, 2012 also had the requisite knowledge and intent to possess that firearm"); App. 317 (arguing that knowledge was not at issue because "[w]hoever possessed [the gun] knew it."); App. 600–01 (stating in closing arguments that "whoever possessed that gun had the knowledge that it was a gun and intended to possess it. It's who possessed it [that] is the question. Not knowledge and intent.").

24

denied possessing the firearm, claiming that it was never in his vehicle and that he was not the person who disposed of it. *Id.* at 176. Over the defense's objection, the district court admitted, as relevant to Lee's knowledge and intent, statements that he made to investigators, including that "he had access to a lot of guns and would use them against anyone who threatens him or his family." *Id.* On appeal, we held that these statements were not admissible to show Lee's knowledge:

> Lee's trial . . . was not about whether he knew that he had a rifle in the back seat of his Jeep. There was no question of accident or mistake. Rather, Lee's defense was simply that there was no rifle in his Jeep and that the rifle recovered at the Apartments was not his.
>
> . . . .
>
> . . . Lee has not put knowledge at issue. Lee is not arguing that he did not know there was a rifle in his back seat. His argument is a straightforward denial that any gun was there.

*Id.* at 186–87. Because Lee's knowledge was not at issue

25

in the case, we concluded that knowledge was not a proper Rule 404(b) purpose for admitting the statements.[9] *Id.*; *see also Lee*, 612 F.3d at 200 (Rendell, J., dissenting) (agreeing with majority's conclusion that "the knowledge and intent rationales for admitting the statements [about guns] do not hold water").

Our sister circuits that have considered this question agree that knowledge is generally not at issue in a prosecution under § 922(g)(1) where the government claims the defendant actually possessed the gun. In *United States v. Linares*, the defendant was prosecuted for being a felon in possession of a firearm based on three eye witness accounts that he fired a gun from the window of his car and later tossed it away. 367 F.3d at 944. Over objection, the district court permitted the government to introduce evidence of Linares's prior conviction for unlawful firearm possession in order to show his "intent, knowledge, and absence of mistake." *Id.* at 946. On appeal, the D.C. Circuit concluded the evidence was erroneously admitted. The court explained: "If the jury believed these eyewitnesses, then Linares

---

[9] The majority ultimately concluded the statements were admissible for another Rule 404(b) purpose: motive. *United States v. Lee*, 612 F.3d at 189. The Government has not offered motive as a proper purpose in this case, nor is there a colorable argument for admitting Caldwell's prior convictions to show motive to possess the gun found at the scene.

26

possessed the gun knowingly; if it did not, then it should have acquitted based on the government's failure to prove possession rather than its failure to prove knowledge." *Id.* Left with this disjunctive choice between actual possession or no possession, the court held the evidence was inadmissible because "no reasonable jury could have concluded that the defendant possessed a firearm either unknowingly or mistakenly."[10] *Id.* at 950.

Similarly, in *United States v. Jones*, the Fifth Circuit concluded that knowledge was not a proper 404(b) purpose where the government's case was premised on a theory of actual possession. A New Orleans police officer witnessed Jones remove a gun from his waistband and place it under a house. *Jones*, 484 F.3d at 785. Jones claimed he never possessed the weapon. *Id.* Over Jones's objection, the district court permitted the government to introduce evidence that he had previously been convicted of the same offense. *Id.* In reversing the conviction, the Fifth Circuit explained that, unlike constructive possession cases where "knowledge and intent are frequently at issue," actual possession cases require the government to show only that the defendant was aware that he physically possessed the gun. *Id.* at 788. After concluding that the government's

---

[10] Despite concluding the evidence was improperly admitted, the court upheld Linares's conviction because it concluded the error was harmless. *Linares*, 367 F.3d at 953.

case relied on an actual possession theory, *see id.* at 790 (rejecting the constructive possession theory because Jones did "not own, rent, occupy, or otherwise exercise any dominion over" the house underneath which the gun was recovered), the court held that knowledge was not a proper basis for admitting the evidence. *Id.*

The record here suggests that the able District Judge initially understood these principles and recognized that Caldwell's knowledge was not a material issue since the only disputed fact was whether he actually possessed the gun. The Court even noted that knowledge might be at issue "in a constructive possession kind of situation," app. 314, but not where Caldwell was "saying he never had a gun." App. 313. Yet despite starting in the right direction, the Court ultimately changed course, concluding that Caldwell "put his knowledge . . . at issue by claiming innocence." App. 526. Based on the principles we have recited above, this decision was incorrect.

Finally, we believe it necessary to address the District Court's suggestion that Caldwell "put his knowledge at issue by claiming innocence." It is unclear whether the District Court understood Caldwell to have "claimed innocence" by testifying at trial, or more broadly by pleading not guilty. Either way, we believe this line of reasoning is improper.

Situations may indeed arise where the content of a

defendant's trial testimony transforms a previously irrelevant 404(b) purpose into a material issue in a case. For example, if Caldwell had testified that he thought the object in his hand was something other than a gun, then it would immediately become critical for the prosecution to rebut his claim of mistake and to show his knowledge of the true nature of the thing possessed. We disagree, however, with the proposition that, merely by denying guilt of an offense with a knowledge-based *mens rea*, a defendant opens the door to admissibility of prior convictions of the same crime. Such a holding would eviscerate Rule 404(b)'s protection and completely swallow the general rule against admission of prior bad acts. *See United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012) (citing *United States v. Hicks*, 635 F.3d 1063, 1071 (7th Cir. 2011)) (explaining that "if a mere claim of innocence were enough to automatically put intent at issue, the resulting exception would swallow the general rule against admission of prior bad acts"). Accordingly, we reject the suggestion that "claiming innocence" is sufficient to place knowledge at issue for purposes of Rule 404(b).

Based on the foregoing reasons, we conclude that knowledge was not at issue in this case and, thus, was not a proper basis for admitting evidence of Caldwell's prior convictions.

(2)

29

We also conclude that the Government failed to satisfy the second step of the 404(b) inquiry which requires that it show that the proffered evidence is actually relevant to the identified non-propensity purpose. "In proffering [prior act] evidence, the government must explain how [the evidence] fits into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Davis*, 726 F.3d at 442 (citing *Sampson*, 980 F.2d at 887). We require that this chain be articulated with careful precision because, even when a non-propensity purpose is "at issue" in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way.

The Government argues that Caldwell's prior convictions are relevant to show his knowledge, yet it has failed to satisfactorily explain why this is so. There is in the record no articulation by the Government of a logical chain of inferences showing *how* Caldwell's prior convictions are relevant to show his knowledge. Nor does the Government present such a chain of logical inferences in its argument on appeal. Instead, the Government repeatedly returns to its baseline position that the evidence is generally relevant to show Caldwell's knowledge that he possessed the gun. This tells us nothing about how the evidence accomplishes this task, and is insufficient to secure admission under Rule 404(b).

The record reveals that the District Court likewise

30

failed to articulate how the disputed evidence tends to show that Caldwell knowingly possessed the gun. During the first trial, the District Court connected the admissibility of the evidence to Caldwell's credibility as a witness, stating that because "this is a complete credibility determination . . . [the evidence] is probative for knowledge." App. 319. We fail to see what bearing Caldwell's credibility as a trial witness has on whether he knowingly possessed a gun the evening of the stop. Caldwell's prior convictions may tend to impeach his credibility as a witness, but the admissibility of evidence for impeachment purposes is an entirely distinct question from its admissibility under 404(b).[11]

Perhaps recognizing that credibility was another matter entirely, the District Court provided a different rationale for admitting the evidence in the second trial. The Court explained that, because the charged offense was "the knowing possession of a firearm . . . , the Government may present other acts or evidence to prove . . . knowledge." App. 525–26. We have already expressed our disagreement with the suggestion that knowledge was at issue in this case. Aside from that, however, the Court's statement still does not explain *how* the evidence tends to prove Caldwell's knowledge that he possessed the gun. Again, we emphasize that it is not

[11]     We address the admissibility of the evidence for impeachment under Rule 609 in Part III, *infra.*

31

enough to merely recite a Rule 404(b) purpose that is at issue; the Court must articulate how the evidence is probative of that purpose.

The reason we require the proponent and the court to articulate a logical chain of inferences connecting the evidence to a non-propensity purpose is because we must assure that the evidence is not susceptible to being used improperly by the jury. Another way to frame this requirement is to ask the prosecution to explain "exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove." *Miller*, 673 F.3d at 699. Framed this way, the flaw in the evidence proffered in this case becomes apparent.

The prosecution's fundamental task was to prove that Caldwell unlawfully possessed the gun recovered by the detectives. Caldwell's defense was that he never possessed the gun. The prosecution sought to admit evidence that, on two prior occasions, Caldwell was convicted of unlawfully possessing firearms. The question the prosecution must answer is this: "How, exactly, do Caldwell's two prior convictions for unlawful firearm possession suggest he knowingly possessed this gun on this occasion?" Hard as we try, we see only one answer to that question: If Caldwell knowingly possessed firearms in the past, he was more likely to have knowingly possessed the firearm this time. This is precisely the propensity-based inferential logic that Rule

404(b) forbids.

We can envision numerous scenarios where, with slightly different facts, a proper, non-propensity chain might be forged. For example, assume that Caldwell's knowledge was at issue because he claimed to have believed the gun in his hand was a toy. Under this hypothetical, the chain of inferences leading to the admissibility of the evidence would be as follows: Caldwell was twice previously convicted of unlawful firearm possession; he is, thus, familiar with the touch and feel of an authentic firearm; and because he knows what a real firearm feels like, it is more likely that he knew the gun in his hand on this occasion was a real firearm.

Alternatively, assume the gun was discovered inside a backpack that Caldwell was carrying, and that he defended the charge by claiming the gun was placed there without his knowledge. If the proffered evidence consisted of eyewitness testimony that Caldwell threatened another individual with a black handgun two hours before his arrest, the chain of logical inferences could be forged as follows: Caldwell possessed a black handgun earlier that evening, therefore it is less likely that a similar black handgun was unknowingly deposited in his backpack.

Importantly, however, the chain of inferences in this latter hypothetical may not necessarily extend to

permit the prosecution to introduce evidence of prior convictions for unlawful gun possession, particularly where those convictions involved different firearms and are remote in time. As the Seventh Circuit explained, "If the prior possession was of a different gun, then its value as direct or circumstantial evidence of the charged possession drops and the likelihood that it is being used to show propensity to possess guns rises considerably. Similarly, as the prior possession is further removed in time, it becomes less probative of possession on the date charged." *Miller*, 673 F.3d at 695.

We engage in the foregoing exercise simply to demonstrate why it is important that a district judge go beyond the question of whether knowledge, or any other non-propensity purpose, is directly at issue in a case. The judge must also analytically consider whether the proffered evidence does in fact tend to establish the fact the proponent is trying to prove. The case before us proves the point. The record suggests that once the District Court concluded that knowledge was at issue, it was content to allow any evidence offered for that purpose. Yet had the Court been more exacting in requiring the prosecution to articulate how Caldwell's 2005 and 2006 firearms convictions tended to prove his knowledge that he was holding this gun some seven years later, it would have been clear that the evidentiary chain cannot survive close scrutiny.

The Government was unable to articulate any

theory that united the prior convictions to Caldwell's knowledge on the night of his arrest. The evidence provided the jury with nothing more than the ability to draw inferences about Caldwell's propensity to possess guns. That evidence should not have been admitted.

(3)

We also conclude that the District Court's Rule 403 analysis did not provide the meaningful balancing required by our precedent. Before prior act evidence may be admitted under Rule 404(b), we require district courts to balance the probative value of the proffered evidence against its prejudicial effect under Rule 403. We will reverse where the Court's reasoning "is not apparent from the record." *Smith*, 725 F.3d at 348 (quoting *Sampson*, 980 F.2d at 889).

We are not required here to perform Rule 403 balancing because the proffered 404(b) purpose was not at issue in the case, nor was the evidence probative of the identified purpose. Nonetheless, in the interest of providing guidance on this issue, we will explain why the District Court's analysis fell short of the mark.

Even if Caldwell's prior convictions were probative of his knowledge (which they were not), the probative value would, at best, be minimal. As already explained, in a trial for unlawful firearm possession by a convicted felon, a defendant's knowledge is generally

35

subsumed within a finding that he physically possessed the firearm. Accordingly, any value added by the prior convictions on the issue of Caldwell's knowledge would be negligible.

Further, the probative value of prior act evidence is diminished where the defendant does not contest the fact for which supporting evidence has been offered. Such was the case here. Caldwell conceded to the jury that "whoever possessed th[e] gun had the knowledge that it was a gun and intended to possess it." App. 600. We do not mean to suggest that the admissibility of evidence under 404(b) is predicated on the manner in which the defendant frames his defense. It is not. *Sampson*, 980 F.2d at 888 ("Issues are not irrelevant just because the defense's theory presupposes them to be so."). Nevertheless, Rule 403 balancing may tilt in favor of excluding highly prejudicial evidence when it is offered to establish a fact that is completely uncontested by the defendant.

On the other side of the scale, it is beyond cavil that the evidence of Caldwell's prior firearm convictions was highly prejudicial. As the Advisory Committee's Note to Rule 404(a) explains, the prejudice associated with character evidence is quite real:

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main

> question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404(a) Advisory Committee's Note; *see also Michelson*, 335 U.S. at 476 (explaining that character evidence "is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge"). The prejudicial impact is only heightened when character evidence is admitted in the form of a prior criminal conviction, especially a prior conviction for the same crime as that being tried. Of this fact, the Government is fully aware. "Although the government will hardly admit it," its motive for introducing prior bad act evidence is "often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." *Sampson*, 980 F.2d at 886.

Based on the record before us, we conclude that the District Court's Rule 403 balancing does not reflect the meaningful evaluation of these competing considerations as required by our cases. As a preliminary matter, the Court did not provide a Rule 403 balancing until the Government requested it "[f]or the record."

App. 526. Following this request, the Court gave the following statement:

> What I want to say is that not only are they admissible under 404(b), but because knowledge and intent are at issue here, they are more probative than prejudicial. I find that the probative value outweighs any prejudicial effect as well as to their admissibility.

App. 527. This statement is nothing more than a bare recitation of Rule 403, with an added notation about the Court's understanding that knowledge is at issue in the case. The Court did not address the diminished probative value of the evidence in light of the fact that the issue of Caldwell's knowledge was unchallenged. Nor did it address the particularly prejudicial impact of introducing evidence that Caldwell was previously convicted of the identical crime for which he was then being tried.

"When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling." *Sampson*, 980 F.2d at 889. But we cannot infer such a "rational explanation" where the court merely recites the text of the rule. The reasoning underlying the Court's Rule 403 balancing was "not apparent from the record." *Smith*, 725 F.3d at 348 (citation omitted). This omission provides an independent ground for reversal.

## C.

The Government maintains that, even if erroneous, the admission of Caldwell's prior convictions does not warrant reversal because any error was harmless. "The test for harmless error is whether it is 'highly probable that the error did not contribute to the judgment.'" *United States v. Cunningham*, 694 F.3d 372, 391–92 (3d Cir. 2012) (citations omitted). "This '[h]igh probability' requires that the court possess a 'sure conviction that the error did not prejudice the defendant.'" *Id.* at 392.

To support its claim that the error was harmless, the Government contends that the remainder of the evidence offered against Caldwell was "overwhelming," noting that two detectives testified that they observed Caldwell with the gun and no one was able to place the gun in Tigney's hands. Though the prosecution's case may have been strong, it does not provide us with a "sure conviction" that the evidence of Caldwell's prior convictions did not contribute to the judgment.

This is not a case where the defendant declined to offer a substantive defense and chose instead to hold the government to its burden of proof. Rather, Caldwell vigorously maintained his innocence throughout both trials, testifying on his own behalf and introducing witness testimony corroborating his claim that he held a cell phone rather than a firearm. Caldwell's theory that Tigney possessed the firearm was bolstered by evidence

that Tigney provided the officers with a false name at the time of the stop. He also managed to poke holes in the Government's investigation, pointing out that it failed to obtain available security surveillance tapes.

We are aware, of course, that the harmless error question in this case is raised against the backdrop of an earlier mistrial in which the jury was unable to agree upon a verdict. Yet our conclusion that the error in this case was not harmless is based solely on our review of the record from the second trial. Our task is not to weigh the evidence anew, but simply to determine whether "it is highly probable that the error did not contribute to the judgment." *Smith*, 725 F.3d at 348 (quoting *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000)). Based on the record before us, we cannot say the erroneously admitted evidence was inconsequential to the verdict. Accordingly, we are unable to find it harmless.

## III.

The Government alternatively argues that the evidence of Caldwell's prior convictions was admissible for impeachment purposes under Federal Rule of Evidence 609(a)(1)(B). The Government preserved this argument by proffering Rule 609 as a basis for admission both in its pretrial filings and during trial. App. 66, 315, 525. Because the District Court found the evidence admissible under Rule 404(b), it did not reach the Government's alternative argument. *See* App. 319–20

("So the record is clear, I'm not saying it is . . . admissible for credibility. I'm saying it's admissible for knowledge and intent.").[12] Although such circumstances may be unusual, it is conceivable that evidence could be excluded under Rule 404(b), yet admissible for impeachment purposes under Rule 609.[13] *See* 28 Charles

---

[12] The Court did, however, explicitly decline to admit several other prior convictions under Rule 609, including cruelty to animals, criminal trespass, and heroin possession. App. 319.

[13] The Eight Circuit has cogently explained why this is so:

> [T]he respective rules operate in two completely different situations. In a criminal setting, evidence offered under Rule 404(b) is substantive evidence against the accused, i.e., it is part of the government's case offered to prove his guilt beyond a reasonable doubt. Rule 609 evidence on the other hand has to do with the accused's ability to tell the truth when testifying on his or her own behalf. While both rules speak of "probative value" and "prejudice," it is critical to note that evidence offered under the respective rules is probative as to different matters. The probative character of evidence under Rule 609 has to do with credibility of a witness, while 404(b) "probativeness" essentially goes to the question

41

Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6134, at 268 (2d ed. 2012) [hereinafter Wright & Gold, *Federal Practice and Procedure*]. Accordingly, we consider whether Rule 609 provided an alternative basis for admitting the evidence of Caldwell's prior convictions.

Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only "if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). This reflects a heightened balancing test and a reversal of the standard for admission under Rule 403. Commentators have observed that structuring the balancing in this manner creates a "predisposition toward exclusion." Wright & Gold, *Federal Practice and Procedure* § 6132, at 216. "An exception is made only where the prosecution shows that the evidence makes a tangible contribution to the

---

of whether or not the accused committed the crime charged. Any similarity or overlap in the standards of admissibility under the respective rules is irrelevant because the rules apply to completely distinct situations.

*United States v. Valencia*, 61 F.3d 616, 619 (8th Cir. 1995).

evaluation of credibility and that the usual high risk of unfair prejudice is not present." *Id.* § 6132, at 217.

Our Court has recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test. These factors include: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." *Gov't of Virgin Islands v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982).

When evaluating the first factor—the kind of crime involved—courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime. The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness. 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 609.06[3][b] (2d ed. 2011) [hereinafter *Weinstein's Federal Evidence*]. Crimes of violence generally have lower probative value in weighing credibility, but may still be admitted after balancing the other factors. In contrast, crimes that by their nature imply some dishonesty, such as theft, have greater impeachment value and are significantly more likely to be admissible. *Id.*

With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried. As the Fourth Circuit has explained:

> Admission of evidence of a similar offense often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him. The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that defendant committed the similar offense for which he is currently charged. The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all.

*United States v. Sanders*, 964 F.2d 295, 297–98 (4th Cir. 1992) (quoting *United States v. Beahm*, 664 F.2d 414, 418–19 (4th Cir. 1981)); *see also Weinstein's Federal Evidence* § 609.05[3][d] ("[P]rior convictions for the same or similar crimes are admitted sparingly."); Wright & Gold, *Federal Practice and Procedure* § 6134, at 253 ("[T]he danger of unfair prejudice is enhanced if the witness is the accused and the crime was similar to the crime now charged, since this increases the risk that the jury will draw an impermissible inference under Rule

404(a)."); *cf. United States v. Hans*, 738 F.2d 88, 94 (3d Cir. 1984) (finding that district court did not abuse its discretion by excluding evidence of prior crime because it was "too similar" to the charged offense).[14]

---

[14] Some have suggested that the unfair prejudice of an identical prior conviction can be reduced by permitting the introduction of only the fact and date of conviction, but not the nature of the crime. *See United States v. Beahm*, 664 F.2d 414, 419 (4th Cir. 1981) (stating that the district court should have excluded the similar prior conviction "or at the very least limited disclosure to the fact of conviction without revealing its nature"). Circumstances may exist where redacting the facts underlying the prior conviction in this manner is a viable way to reduce the prejudicial effect of the evidence. However, this approach may create other obstacles to admission. There are many types of felonies, and not all felony convictions strongly support the inference that the defendant is untrustworthy. Thus, the probative value of a prior felony conviction will be diminished where the jury is not provided information about the prior conviction that would help in evaluating the extent to which the offense reflects on the defendant's veracity as a trial witness. Additionally, in a situation such as this one—where the jury is already aware that the defendant is a convicted felon—the probative value is further diminished because introducing only the fact that the defendant has a prior history of unlawful behavior would not tell the jury anything it does not already know.

The second factor is the age of the prior conviction. Convictions more than ten years old are presumptively excluded and must satisfy the special balancing requirements in Rule 609(b) to overcome this presumption. But even where the conviction is not subject to the ten-year restriction, "the passage of a shorter period can still reduce [a prior conviction's] probative value." Wright & Gold, *Federal Practice and Procedure* § 6134, at 258. The age of a conviction may weigh particularly in favor of exclusion "where other circumstances combine with the passage of time to suggest a changed character." *Id.* For example, a prior conviction may have less probative value where the defendant-witness has maintained a spotless record since the earlier conviction or where the prior conviction was a mere youthful indiscretion. Conversely, the probative value of an older conviction may remain undiminished if the defendant was recently released from confinement or has multiple intervening convictions, both of which could suggest his character has not improved. *See id.* § 6134, at 259 (collecting cases).

The third factor inquires into the importance of the defendant's testimony to his defense at trial. "The tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions. If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction

46

impeachment, the court in effect prevents the accused from testifying." Glenn Weissenberger & James J. Duane, *Weissenberger's Federal Evidence* § 609.2 (4th ed. 2001); *see also Weinstein's Federal Evidence* § 609.05[3][e] ("A defendant's decision about whether to testify may be based in part on whether his prior convictions will be admitted for impeachment purposes. Thus, the fact that a defendant's testimony is important to demonstrate the validity of his or her defense constitutes a factor weighing against the admission of a prior conviction."). "If, on the other hand, the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." *Weinstein's Federal Evidence* § 609.05[3][e]; *see also United States v. Causey*, 9 F.3d 1341, 1344 (7th Cir. 1993) (noting that prejudicial impact diminished where defendant "did not obviously need to testify to raise his various defenses" because several other defense witnesses provided the same testimony).

The final factor concerns the significance of the defendant's credibility to the case. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Weinstein's Federal Evidence* § 609.05[3][f]. *See United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002) (affirming admission of prior conviction under Rule 609(a) because the defendant's credibility was important). Conversely,

the probative value of a defendant's prior conviction may be diminished "where the witness testifies as to inconsequential matters or facts that are conclusively shown by other credible evidence." Wright & Gold, *Federal Practice and Procedure* § 6134, at 258.[15]

---

[15]    We acknowledge the tension between the related third and fourth factors. *See, e.g.*, Roger Park & Tom Lininger, The New Wigmore: Impeachment and Rehabilitation § 3.4.4.1.1.4 (2012) ("There is a tension between these two factors. Perhaps they cancel each other out."); Jeffrey Bellin, *Circumventing Congress: How the Federal Courts Opened the Door to Impeaching Criminal Defendants with Prior Convictions*, 42 U.C. Davis L. Rev. 289, 318 (2008) ("In essence, the factors cancel each other out. To the extent a defendant's testimony is 'important' (for example, if the defendant is the key defense witness), his credibility becomes 'central' in equal degree, leading to a curious equipoise. . . . Thus, [these] factors seem[] to have no practical significance at all, existing in a rough state of equipoise that prevent[s] either factor from impacting the overall impeachment calculus."); Roderick Surratt, *Prior-Conviction Impeachment Under the Federal Rules of Evidence: A Suggested Approach to Applying the 'Balancing' Provision of Rule 609(a)*, 31 Syracuse L. Rev. 907, 943 & 945 (1980) (observing that "it appears that as one of these factors increases in importance in a particular case, so does the other" and "there appears to be no principled way to determine which factor should prevail"). Be that as it may, these factors have long been accepted as independent components of the Rule 609(a)(1) balancing

After reviewing the record and the arguments presented on appeal, we conclude that the Government has failed to carry its burden of showing that the probative value of Caldwell's prior convictions outweighs their prejudicial effect under Rule 609(a)(1)(B). The only factor the Government identified in favor of admission is that Caldwell's credibility was a central feature of the case. We do not minimize this point. At its core, this case was a "he said, they said" battle between Caldwell's version of events and that of the detectives. *See* Wright & Gold, *Federal Practice and Procedure* § 6134, at 256 ("[W]here a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased."). But this single factor is not enough to warrant admission of the prior convictions where all others favor exclusion. Caldwell's prior state conviction was quite similar to the charged offense, and his prior federal conviction was an identical match. That made the "priors" highly prejudicial. At the opposite end, the impeachment value of the prior convictions is low because unlawful firearms convictions do not, by their nature, imply a dishonest act. The Government also failed to show that the probative value of the evidence was not diminished by the passage of more than six-and-a-half years. And finally, Caldwell's testimony was fundamentally important to his defense.

inquiry and we conclude that they should continue to inform the district court's admissibility determination.

49

As already noted, the jury was required to choose between Caldwell's version of events and that provided by the officers. Given the consistency of the officers' accounts, Caldwell would have taken a great risk by failing to testify in his defense.

When offering a prior conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B). Based on our review of the record before us, the Government failed to establish that "the probative value of the evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1)(B). Accordingly, Rule 609 was not a proper alternative basis for admitting Caldwell's prior convictions.[16]

## IV.

Finally, Caldwell claims the District Court erred by refusing to admit Tigney's out-of-court confession to defense counsel as a statement against penal interests under Rule 804(b)(3). We review a district court's decision to admit or exclude evidence under Rule 804(b)(3) for abuse of discretion. *United States v. Boyce*, 849 F.2d 833, 837 n.3 (3d Cir. 1988).

---

[16] Our determination that the Government did not satisfy its heightened burden under Rule 609(a)(1)(B) in the previous trial does not preclude it from attempting to satisfy this burden in any subsequent proceeding.

Rule 804(b)(3) provides an exception to the general rule against the admission of hearsay statements when a declarant is unavailable and his out-of-court statement tends to subject him to criminal liability. Fed. R. Evid. 804(b)(3)(A). There is, however, one caveat to admission. Where the statement is offered to exculpate the accused in a criminal trial, it must be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B). This requirement reflects the concern that a third party with less risk of prosecution will fabricate a confession to exculpate the guilty party. *See United States v. Guillette*, 547 F.2d 743, 754 (2d Cir. 1976) (discussing the "inherent danger that third party confessions tending to exculpate a defendant are the result of fabrication"). Importantly, the rule "does not require that *the information within the statement* be clearly corroborated; it requires only that there be corroborating circumstances that clearly indicate the trustworthiness of *the statement itself.*" *Weinstein's Federal Evidence* § 804.06[5][b] (second emphasis added); *see also* George E. Dix, et al., *McCormick on Evidence* § 319 (7th ed. 2013) ("Significantly, the rule does not require that the statements themselves be independently proved to be accurate; rather it requires only that corroborating circumstances indicate trustworthiness.").

We assess corroboration in light of the totality of circumstances. *See Boyce*, 849 F.2d at 837. The Federal

51

Rules of Evidence do not describe the type of corroborating circumstances that "clearly" indicate trustworthiness, nor has our Court expounded on this issue. Examples of corroborating circumstances identified by other courts include the lack of a close relationship between declarant and the accused, *United States v. Silverstein*, 732 F.2d 1338, 1346 (7th Cir. 1984), the fact that the statement was voluntarily made after the declarant was advised of his *Miranda* rights, *United States v. Price*, 134 F.3d 340, 347–48 (6th Cir. 1998); and the fact that the statement was not made to curry favor with the government, *United States v. Garcia*, 897 F.2d 1413, 1421 (7th Cir. 1990). *See also Weinstein's Federal Evidence* § 804.06[5][b][ii] (listing these three as examples of circumstances that might satisfy the corroboration requirement).

Here, the only remotely corroborating circumstance is that Tigney confessed to Caldwell's defense counsel at a time when the Government was not investigating him in connection with the offense. This aside, all other considerations reflect adversely on the trustworthiness of the statement. The record reflects that Tigney viewed Caldwell "like an older brother," app. 108, and thus might have been motivated to lie on Caldwell's behalf. The confession was made to defense investigators (not prosecutors) and it was made nearly four months after Caldwell was arrested. At the time the statement was made, Tigney was not under oath, had not

been read his *Miranda* rights, and was not represented by counsel. Finally, Tigney's account changed on multiple occasions, with him ultimately recanting his admission to defense investigators. Given these circumstances, we hold that the District Court did not abuse its discretion in excluding Tigney's statements because the totality of the circumstances support its conclusion that the confession lacked the indicia of trustworthiness required by Rule 804(b)(3).

V.

In sum, we conclude that the admission under Rule 404(b) of Caldwell's prior convictions for unlawful firearm possession was erroneous and that the error was not harmless. While it may be that this opinion breaks no new ground, we believe it necessary to reiterate the importance of a methodical approach by the proponent of prior act evidence and a carefully reasoned ruling by the trial judge who must decide the question of admissibility.

For the reasons stated, we will vacate the judgment of conviction and sentence and remand for further proceedings consistent with this opinion.