**PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1516
_____

UNITED STATES OF AMERICA,

v.

DURRELL SMITH,

                                        Appellant.

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 10-704)
District Judge: Honorable Mary L. Cooper
_____

Argued: May 15, 2013
_____

Before: SLOVITER, FUENTES, and ROTH, *Circuit Judges*

(Opinion Filed: August 6, 2013)
_____

1

Kevin F. Carlucci, Esq. **[ARGUED]**
Office of the Federal Public Defender
1002 Broad Street
Newark, New Jersey 07102

*Attorneys for Appellant Durrell Smith*

Steven G. Sanders, Esq. **[ARGUED]**
Office of the United States Attorney
970 Broad Street
Newark, New Jersey 07102

*Attorney for Appellee United States of America*

_____

OPINION OF THE COURT

_____

FUENTES, *Circuit Judge*:

At Durrell Smith's trial for threatening federal officers with a gun, the Government sought to establish that two years earlier Smith had been observed dealing drugs at the same location as the charged assault. Smith objected, arguing that the relevance of the drug deal to the gun crime requires an inference that because Smith was a drug dealer in the past he must have been a drug dealer on the day in question. The District Court overruled Smith's objection and permitted evidence about the earlier drug sale. Smith was convicted and sentenced to 30 years in prison.

We conclude that the evidence of Smith's drug distribution, two years before the incident for which he was

on trial, violates our long-standing requirement that, when seeking to introduce evidence of prior bad acts under Rule 404(b), the proponent must set forth "a chain of logical inferences, *no link of which* can be the inference that because the defendant committed . . . offenses before, he therefore is more likely to have committed this one." *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992) (emphasis added). We therefore reverse the District Court's evidentiary ruling, vacate Smith's conviction as to Counts 1 and 2 of the Indictment, and remand for a new trial.

## I. Factual and Procedural Background

### A. The September 2010 Incident

On September 1, 2010, FBI Agent Michael Alerassool and three other officers were conducting surveillance in an unmarked car with tinted windows on the corner of Brunswick and Parkhurst Streets, as part of an ongoing drug activity investigation in Newark. Most people in the vicinity scattered when the vehicle arrived on the street, but Alerassool observed Appellant Durrell Smith through the car window, standing his ground across the street and staring into the vehicle.

Smith then disappeared from Alerassool's sight but returned about one minute later, walking at a regular pace towards the car. As Smith passed under a street lamp, Alerassool noticed that he had a handgun in his right hand, "pointing [the gun] kind of at a downward angle," about seven inches from his right thigh. App. 115. Smith then began to rotate his shoulder to face the officers as he approached the vehicle. Alerassool called out to the others in

the car that Smith had a gun, and Smith was arrested before he could get any closer. The officers recovered a CF-380 semi-automatic handgun from Smith's person but there is no contention that drugs were found on Smith on that day.

The next day, Smith was interviewed by Newark Police Detective Raul Diaz. Smith waived his *Miranda* rights and confessed that he had been on the corner of Brunswick and Parkhurst the night before and that he had a gun. However, Smith denied that the gun belonged to him. Moreover, Smith claimed that he retrieved the gun in self-defense because, although he did not know who was in the car, he feared for his life given that there had been a shooting nearby two weeks prior involving a similar car.

## B.     The Government's Rule 404(b) Motion

Smith, a convicted felon, was indicted on three counts: (1) threatening a federal officer in violation of 18 U.S.C. §§ 111(a)(1) & (b); (2) using and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).

Before trial, the Government moved *in limine* to admit evidence under Rule 404(b) of the Federal Rules of Evidence that, two years prior to his arrest, Smith had engaged in a drug transaction on the same street corner. The Government noted that the "case boils down to" Smith's motivation in retrieving the gun because Smith claimed that he retrieved it in self-defense, and that the evidence would rebut that theory by establishing that Smith had a motive to assault the people in the vehicle. App. 40. Specifically, the evidence would

4

show that Smith "has a history of selling heroin on this corner," which, along with evidence that "drug dealers often leave the guns in a stash and the drugs in a different stash" and that drug dealers use weapons, would prove that Smith wanted to assault the officers to protect "his drug turf . . . that particular night." App. 44, 46. Smith objected, arguing that this line of reasoning violated Rule 404(b)'s prohibition on evidence about a defendant's character, used to show his propensity to act in accordance with that character. The District Court deferred ruling on the motion.

After concluding its initial presentation of the evidence, the Government renewed its motion, again arguing that the evidence of the 2008 drug deal was necessary to show that Smith's reason to assault the officers was to protect his turf. The Government framed its argument as "this defendant was seen in the past selling drugs at that particular corner, which shows that he sells drugs at that corner." App. 212. Smith again objected, arguing that the evidence was impermissible propensity evidence.

The District Court allowed the evidence, explaining that it "is important to the Government in order to connect its proofs that there was an intentional assault." App. 217. The Court reasoned that because "the issue that the jury ha[d] to resolve" was whether Smith's motivation was "offensive, rather than merely defensive," the evidence was admissible to determine whether Smith acted in self-defense. App. 220. The Court then correctly recognized that admissibility of Rule 404(b) evidence requires district courts to follow four steps, as set forth in *Huddleston v. United States*, 485 U.S. 681, 691 (1988). Analyzing these steps, the District Court concluded that the evidence was offered for a proper purpose under Rule

5

404(b), *i.e.*, "to establish motive;" that the evidence was relevant under Rule 402; that although the evidence was "significantly prejudicial" it was not "unfairly prejudicial" under Rule 403; and that it would give an appropriate limiting instruction to the jury. App. 221-22.

### C.    The September 2008 Incident

After this ruling, FBI Agent Michael Brooks testified that in September 2008 he was conducting an investigation of drug activity in the same corner in Newark as the one Smith was arrested on in 2010, when he observed Smith engaging in a sale of heroin. There were no firearms involved in the 2008 incident.

The District Court then gave a limiting instruction, which it repeated after its final charge, explaining that the testimony "was admitted for limited purposes only," namely to "decid[e] whether the defendant had the intent and a motive to commit the acts charged." App. 239. The Court asked the jury not to "consider this evidence as proof that the defendant has a bad character or any propensity to commit crimes." App. 240.

### D.    Closing Arguments, Conviction, and Sentence

The Government began its summation by painting Smith as a drug dealer with "turf" to protect. App. 338. The prosecutor twice argued that on the night of September 2010 Smith meant to threaten the people in the car because, even if the jury believed Smith's statement that there had been a shooting two weeks prior, Smith wanted to menace the

6

individuals in the car for "the shoot-up of [his] turf." App. 343. In rebuttal, the Government also asked the jury to think: "What's [Smith] doing standing on a corner? There is no house there, what's he doing staring at a car? What's he doing over there? . . . He's been on that block before, hasn't he? And not just two years ago." App. 365.

The jury convicted Smith on all counts. He was adjudicated a career offender based on the 2008 heroin sale that was the subject of the 404(b) motion and an unrelated drug possession charge, and sentenced to consecutive sentences of 240 months on the assault charge, 84 months on the use of the gun charge, and 36 months on the felon in possession charge, for a total of 360 months' imprisonment.

## II.    Analysis

### A.    Rule 404(b) and Standard of Review

Smith argues that the District Court violated Rule 404(b) of the Federal Rules of Evidence in admitting the evidence of the 2008 drug deal.[1] Rule 404(b) prohibits evidence of a crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive." Fed. R. Evid. 404(b)(2). In determining the admissibility of prior bad acts evidence, a district court must analyze, under the familiar *Huddleston*

---

[1]    The District Court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231, and we exercise jurisdiction pursuant to 28 U.S.C. § 1291.

test, whether the evidence: (1) has a proper evidentiary purpose under Rule 404(b); (2) is relevant under Rule 402; (3) is of such probative value as to outweigh the prejudice to the defendant as required by Rule 403; and (4) is accompanied by a proper limiting instruction. 485 U.S. at 691. We normally review evidentiary rulings for abuse of discretion, but we exercise plenary review over "whether evidence falls within the scope of Rule 404(b)." *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010); *see also United States v. Lee*, 612 F.3d 170, 186 (3d Cir. 2010).

## B.  Whether the Evidence of the 2008 Drug Sale Has a Proper Purpose

To serve a proper Rule 404(b) purpose, evidence must be "probative of a material issue other than character." *Huddleston*, 485 U.S. at 686. The Government argues that the evidence of Smith's 2008 drug deal fits into Rule 404(b)'s exception for evidence tending to show a defendant's motive, because Smith's 2008 drug dealing shows that Smith had a motive to threaten individuals at the same corner in 2010: to protect his "turf." We agree that motive was relevant in this case and that the evidence of the 2008 drug sale tends to establish motive. But that is not the end of the inquiry.

To meet the first requirement for admissibility, the proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference. *United States v. Echeverri*, 854 F.2d 638, 644 (3d Cir. 1988); *Sampson*, 980 F.2d at 886-87; *see also* 22 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5239, at

8

459 (1978) ("[E]vidence of other crimes can be used to prove the conduct of a person if the inference to conduct can be made without the need to infer the person's character as a step in the reasoning from the other acts to the conduct in issue."). As we explain below, that did not occur here.

"[T]he line between what is permitted and what is prohibited under Rule 404(b) is sometimes quite subtle," *United States v. Murray*, 103 F.3d 310, 316 (3d Cir. 1997), and "despite the recurrence of the issue[], the opinions are often poorly reasoned and provide little guidance to trial judges." WRIGHT & GRAHAM, § 5239 at 427. The problem stems in part from two competing realities that surround most Rule 404(b) evidence. On the one hand, proponents of Rule 404(b) evidence will normally be able to conceive of a proper purpose other than propensity. But if this were sufficient to admit the evidence, the basic idea embodied by Rule 404(b), that simply because one act was committed in the past does not mean that a like act was again committed, would be threatened. On the other hand, all Rule 404(b) evidence is at least somewhat prejudicial to the party against whom it is admitted and will invite the jury to make inferences about his or her character. This alone cannot lead to exclusion. *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008). We resolve this inherent tension by requiring that the purpose of the Rule 404(b) evidence be established without an inference that the party against whom it is admitted acted in conformity with whatever the evidence of the prior act says about his or her character. We therefore do not exclude evidence simply if it invites character inferences, but only evidence that is used to prove a person's character and that invites the inference that the person acted in conformity with that

9

character, and was therefore more likely to have committed the charged crime.

The foregoing resolves this case, which presents a somewhat novel fact pattern. The Government insists that the evidence of the 2008 drug sale does not say anything about Smith's character, but simply provides his motive for the assault in 2010, "a continuing interest in his turf." Gov't Br. at 30; *see also id.* at 31 (stating that the Government "never argued that Smith likely committed the charged assault because he previously sold drugs," only that the "prior drug sale showed [Smith's] interest in the corner"). The problem with this line of reasoning is that, for the evidence of the 2008 drug sale to speak to Smith's motives in 2010, one must necessarily (a) assume something about Smith's character based on the 2008 evidence (that he was then a drug dealer), and (b) infer that Smith acted in conformity with that character in 2010 by dealing drugs and therefore had a motive to defend his turf. This clearly violates Rule 404(b) because the Government used the 2008 drug deal "to prove [Smith's] character [as a drug dealer] in order to show that on a particular occasion [Smith] acted in accordance with th[at] character." Fed. R. Evid 404(b).[2]

Had Smith been observed dealing drugs on that street corner the morning of the incident, the Government would have a much stronger case, as it may have argued that the evidence had the proper purpose of showing a "common

---

[2] The Government cannot explain how or why Smith would have "turf" to protect if he were not a drug dealer and we reject the unpersuasive attempts to separate the concepts of "turf" and "drug dealer."

scheme or plan," *see* Rule 404(b)(2), or "as background information which completes the story of the crime," *Green*, 617 F.3d at 249. But, "ordinarily, when courts speak of 'common plan or scheme,' they are referring to a situation in which the charged and the uncharged crimes are parts of a single series of events." *Gov't of V.I. v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992). Here, there is no contention that the 2008 drug deal and the 2010 crime were part of a single series of events. Nor could there be. Moreover, the temporal separation between the two events, the lack of similarity between them (in that one involved drugs and no gun and the other a gun and no drugs), and the isolated nature of the 2008 drug deal, all weaken the force of the evidence standing on its own, to the point where the jury has to make inferences about Smith's character from his 2008 conduct in order to learn something about Smith's 2010 motivations from that conduct. *See, e.g., Murray*, 106 F.3d at 318 (reversing inclusion of evidence of a prior uncharged murder in a prosecution for a different murder in part because the method of the first murder was different than the second); *United States v. Mayans*, 17 F.3d 1174, 1182-83 (9th Cir. 1994) (reversing the admission of the Rule 404(b) evidence because there was not a close connection between the past drug deals and the charged offense).

That the Government did not explicitly make a propensity argument does not change the outcome, particularly given that it did invite the jury to make the improper inferential leaps at summation with its explicit and repeated references to Smith's "turf," and with the rhetorical questions: "What's he doing over there? . . . He's been on that block before, hasn't he? And not just two years ago." These circumstances are reminiscent of *United States v. Conner*,

11

where the Seventh Circuit held that evidence of a prior drug deal was improperly admitted because the Government repeatedly invited the jury to infer that the defendant had acted in conformity with the past conduct, noting that it "was not an 'isolated incident,' and not[ing] that the second [act] corroborated the first [act]." 583 F.3d 1011, 1024 (7th Cir. 2009). The court reasoned that "[t]he implication of the prosecutor's argument was that Conner was more likely to have [committed the charged crime] because he had done so on other occasions." *Id.* at 1024-25. *See also Murray*, 103 F.3d at 320 (overturning the admission of evidence of a prior murder because the prosecutor had asked at closing: "Doesn't [the prior murder] help establish that this defendant was part of this conspiracy [for the charged murder]? . . . . [D]oesn't that help establish that this defendant is . . . a killer?").

Moreover, the cases cited in the Government's brief contrast sharply with, and are distinguishable from this case, as none involved a situation where the jury was required to make an assumption about the defendant's character based on the past act, or to elucidate the defendant's motive by assuming that the defendant acted in accordance with that character when committing the charged crime. *See, e.g.*, *Green*, 617 F.3d at 249-50 (admitting evidence that a defendant on trial for attempting to buy cocaine had threatened to kill an informant, as evidence of the informant's motive to cooperate); *United States v. Sriyuth*, 98 F.3d 739 (3d Cir. 1996) (admitting evidence the defendant had sexually assaulted a kidnapping victim, as it established a motive for the charged kidnapping).[3]

---

[3]     That Smith may have invited the testimony by making an issue of his lack of motive to assault the officers does not

12

The Government also attempts to narrow the scope of Rule 404(b) by contending that the "no link" prohibition is limited to inferences that the defendant committed "the crime charged," and posits that because the 2008 act (drug dealing) is not the same as the act charged (assault), no error occurred. Gov't Br. at 30-31 (citing *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994)). But Rule 404(b) is not so limited. The problem with propensity evidence is that it "weigh[s] too much with the jury [because it] overpersuade[s] them as to prejudge one with a bad general record and den[ies] [the defendant] a fair opportunity to defend against a particular charge," without limitations based on whether the charged and uncharged acts are the same. *Michelson v. United States*, 335 U.S. 469, 476 (1948). Limiting the reach of the Rule as the Government suggests would curtail these protections in a way that, to our knowledge, no court ever has. *See, e.g.*, *Himelwright*, 42 F.3d at 785-86 (holding that evidence of purchases of weapons was inadmissible in a trial for a different crime, making threats to postal workers).

As a final argument, the Government analogizes this case to a hypothetical situation wherein a defendant is observed breaking into a vacant lot in order to live there, and is later prosecuted for threatening an individual who also attempted to enter that lot. The Government contends that in

---

eliminate the rule that no link in the chain of logical inferences may involve a propensity inference. *See, e.g.*, *Pinney*, 967 F.2d at 917 (noting that the "need to dispel an exculpatory [explanation] implanted by the defense . . . can fulfill the proper purpose requirement of Rule 404(b)" but excluding the evidence as a violation of the "no link" requirement).

13

that situation, evidence of the prior breaking and entering would be admissible to explain the defendant's motive to threaten the would-be intruder. But even assuming we agree with that legal proposition, the hypothetical only highlights what is different, and dispositive, about this case—the evidence of the prior breaking and entering does not speak to the defendant's character as someone likely to make threats, and the motive does not hinge on an inference that he acted in accordance with that character. Additionally, the breaking and entering evidence fairly "completes the story [of the crime]" without a propensity inference. *Green*, 617 F.3d at 249. Here, however, there is no continuous, ongoing conduct between the 2008 and 2010 acts (that Smith was in jail for some of the intervening months explains but does not eliminate the lack of continuity between the two acts). Moreover, to reach the "motive" purpose from the evidence of the 2008 drug sale, an inference about Smith's character (that he was a drug dealer) and an inference that he acted in conformance with that character in 2010, are required before the jury may determine that Smith committed the charged crime. As a matter of law, then, the evidence of the 2008 drug sale did not have a proper Rule 404(b) purpose.

### C.     The Balancing Required By Rule 403

We also conclude that the District Court's balancing of the prejudicial nature of the evidence against its probative value warrants reversal. To start, the District Court stated that the effect of the 2008 drug deal evidence was "significantly prejudicial" to Smith. App. 221. After this statement, however, the District Court merely said that "given the issues in this case, it is not unfairly prejudicial." App. 222. In light of the significantly prejudicial nature of the

14

prior acts evidence, we find this recitation of the third *Huddleston* factor insufficient. In particular, the District Court did not address the diminished probative value of the evidence of the 2008 drug deal in light of the fact that the transaction did not involve firearms, or of the fact that the charged 2010 offense did not involve narcotics. Thus, we also reverse Smith's conviction because the District Court's Rule 403 reasoning "is not apparent from the record." *United States v. Sampson*, 980 F.2d 883, 889 (3d Cir. 1992).[4]

### D.    The Error Was Not Harmless

The Government finally contends that any error was harmless because: (1) Smith confessed that he retrieved the gun to protect himself; (2) his counsel conceded at closing that Smith carried the gun "in such a way as to discourage the occupants of the car from 'messing' with him"; and (3) Smith returned to the corner "instead of simply walking away."

---

[4]    We also find unpersuasive the contention that the prejudicial effect of the 2008 drug sale evidence is diminished because the crime charged was more serious. If that was the proper rubric of analysis, defendants on trial for the most serious crimes would be exposed to a broader universe of Rule 404(b) evidence than defendants on trial for mundane offenses, a result we cannot square with the text or purpose of the Rule. *United States v. Gilbert*, a case which the Government contends supports a contrary conclusion, only spoke of the comparative prejudicial effect of two sets of proffered Rule 404(b) evidence, it did not involve weighing the prejudicial effect of Rule 404(b) evidence against the crime charged based on their relative seriousness. 229 F.3d 15 (1st Cir. 2000).

15

Gov't Br. at 37. We disagree. Smith's counsel's statements at summation are not evidence. More importantly, evidence that Smith returned to the street corner rather than walking away and that he wanted to protect himself, while certainly probative of Smith's motives, is hardly enough to convince us that "it is highly probable that the error did not contribute to the judgment." *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000) (internal quotation omitted). Indeed, the District Court characterized the totality of the evidence without the 2008 drug sale as establishing "fairly innocent . . . circumstances." App. 219. Accordingly, the error was not harmless.[5]

**III.  Conclusion**

For the foregoing reasons, we reverse the District Court's admission of the evidence of the 2008 drug sale, vacate Smith's conviction as to Counts 1 and 2 and his sentence in its entirety,[6] and remand the case for a new trial.[7]

---

[5]    Nor are we convinced that the curative instruction is sufficient to permit us to overlook the error. We credit Smith's contention that, had the District Court tailored the instruction to the specific facts of this case, it would have discovered that the "motive" purpose of the 2008 evidence was infused with improper propensity inferences.

[6]    We vacate Smith's sentence in its entirety so that the District Court may "reconstruct the sentencing architecture upon remand." *United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997).

16

<hr />

[7] Smith also moved to strike from the Indictment reference to the fact that the gun retrieved in 2010 had an obliterated serial number, and the District Court denied the motion. We have carefully considered Smith's arguments with respect to this motion on appeal, and conclude that they are meritless. Accordingly, we affirm the District Court's evidentiary ruling with respect to that motion.