**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-1847

_____

UNITED STATES OF AMERICA

v.

GREGORY WASHINGTON,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 2-11-cr-00042-011)
District Judge: Hon. Arthur J. Schwab

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 31, 2014

_____

BEFORE: McKEE, *Chief Judge*, GREENAWAY, JR., and KRAUSE, *Circuit Judges*.

(Opinion Filed:   March 27, 2015)

_____

OPINION*

_____

McKEE, *Chief Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

A jury convicted Gregory Washington of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. He was sentenced to 262 months' imprisonment followed by a five-year term of supervised release. Washington appeals both his conviction and his sentence on a number of grounds. Although we agree that the District Court erred by failing to state its reasons on the record for denying Washington's 404(b) motion, we will affirm the judgment of conviction because the error was harmless and none of Washington's other claims have merit.[1]

## I. BACKGROUND

Gregory Washington was convicted of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. At sentencing, the District Court calculated a Guidelines range of 262 to 327 months' imprisonment, and it imposed a sentence of 262 months' imprisonment followed by a five-year term of supervised release based on several sentencing enhancements.

The evidence at trial included the testimony of Gregory O'Neal, whom the Government alleged was a co-conspirator in Washington's large-scale drug distribution

---

[1] The district court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction of this timely appeal from the District Court's judgment of conviction under 28 U.S.C. § 1291. We review a district court's evidentiary rulings principally for an abuse of discretion. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010) (citing *Complaint of Consolidation Coal Co.*, 123 F.3d 126, 131 (3d Cir. 1997)). However, when the district court's rulings are based on a legal interpretation of the Federal Rules of Evidence, including whether evidence falls within the scope of Rule 404(b), we exercise plenary review. *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014) (citing *Green*, 617 F.3d at 239).

ring. However, over Washington's objection, O'Neal also testified about dealings outside the timeframe of the charged conspiracy.

The evidence against Washington reflected a relationship whereby Washington and co-conspirators regularly updated each other about suppliers, availability, and prices of heroin, as well as feedback from customers. At trial, Washington argued that the conversations the jury heard were ambiguous, and that they were not actually referring to heroin. Though the communications were often in code, the jury apparently concluded that the conspirators *were* referring to heroin. Washington also argued that the Government had not met its burden of proving that he was a member of a drug conspiracy.

Following his conviction and the imposition of his sentence, Washington brought this appeal. He makes a number of arguments, including most notably that O'Neal's testimony was wrongly admitted in violation of Rule 404(b).[2]

## II. DISCUSSION

### A.

Extrinsic evidence of a prior crime or bad act is properly analyzed under Rule 404(b), while intrinsic evidence need not be. *Green*, 617 F.3d at 245. Uncharged

---

[2] Washington raises the following issues on appeal in addition to the 404(b) issue: (1) that the evidence presented at trial was not sufficient to sustain a conviction for conspiracy; (2) that the district court erred by finding by a preponderance of the evidence that Washington had distributed more than one kilogram of heroin; (3) that the district court erred by increasing Washington's offense level by two points for obstruction of justice; and (4) that the court erred by applying the three-point sentencing enhancement after finding that Washington played a manager/supervisor role in the conspiracy. We conclude that Washington was unable to demonstrate reversible error with respect to any of these issues, and we therefore will decline to grant relief on those claims.

misconduct that "directly proves" the charged crime, or which both happened contemporaneously with and facilitated the charged crime, is intrinsic evidence; all other uncharged misconduct is extrinsic. *Id.* at 248-49. While O'Neal's testimony about his relationship with Washington outside the charged time period may have helped the Government's case, it was not "direct proof" of the charged offense.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). However, such evidence is admissible for a non-propensity purpose, such as those listed under Rule 404(b)(2). This court has developed a four-part test for admissibility under Rule 404(b): "Prior-acts evidence is admissible only if it is (1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing requirement; and (4) accompanied by a limiting instruction, if requested." *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013) (citing *Green*, 617 F.3d at 249); *see also Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

Because the evidence that may be admitted under Rule 404(b) has a unique potential to distract the jury, inflame emotions, or arouse prejudices by reflecting negatively on a defendant's character, we require that district courts employ "care and precision" in ruling on the admissibility of such evidence. *United States v. Caldwell*, 760 F.3d 267, 277 (3d Cir. 2014). If the evidence is admitted, the district court must thoroughly explain its reasoning as to each step of the four-prong test on the record. *See id.* at 276-77. The government must also act with care, explaining how the evidence "fits

4

into a chain of inferences—a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Davis*, 726 F.3d at 442 (citing *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992). "Unfortunately, these requirements are 'so often honored in the breach' that they resonate 'about as loudly as the proverbial tree that no one heard fall in the forest.'" *Id.* (quoting *United States v. Givan*, 320 F.3d 452, 466 (3d Cir. 2003) (McKee, J., dissenting)). Regrettably, this is yet another example of the district court ignoring our direction about how such evidence is to be analyzed. Nevertheless, that does not necessarily entitle Washington to relief.

As to the first step of the analysis, the government must identify a proper purpose that the evidence serves, and that purpose must actually be "at issue" in, or relevant to, the case. *See Caldwell*, 760 F.3d at 276. In its response to Washington's motion in limine, the Government explained that O'Neal's testimony about his dealings with Washington in 2008 and 2009 would show "Washington's opportunity and capacity to distribute heroin with the same co-conspirators in 2010 and 2011 [(the time period of the charged conspiracy)] that he conspired to distribute heroin with in 2008 and 2009. The evidence will explain the existing relationship between Mr. Washington and some of his co-conspirators . . . ." App. 34-35. We have held that "[a]n additional unenumerated yet permissible purpose for admitting evidence under Rule 404(b) is to 'demonstrate a continuing relationship between an unindicted co-conspirator and the defendant.'" *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (quoting *United States v. Scarfo*, 850 F.2d 1015, 1019 (3d Cir. 1988)). Thus, the Government identified a proper non-propensity purpose for the evidence. In denying Washington's 404(b) motion, the

5

District Court expressly agreed with the Government's proffered non-propensity purpose, noting in an entry on the docket that "[t]he Government is allowed to present this evidence at trial to attempt to prove a continuing relationship between conspirators." App. 16.

However, that was the full extent of the District Court's explanation of its reasons for admitting the evidence. The court ignored the fact that we have clearly (and repeatedly) stated that, when a district court admits 404(b) evidence for a proper purpose, it "must put a chain of inferences into the record, none of which is the inference that the defendant has a propensity to commit this crime." *Sampson*, 980 F.2d at 888. Rather than doing that here, the District Court merely stated a proper non-propensity purpose; that is not sufficient.

We have also explained that, in some limited situations, it may be clear that the district court adopted the position proffered by the evidence's proponent, and we may therefore properly look to that party's reasoning to understand the logic of the district court. *See id.* (explaining that the district court's "conclusion may have been sufficient had the government thoroughly explained its basis for admission"). However, this is not such a case. Though the Government provided the District Court with ample legal support for the position that "continuing relationship" evidence is often admitted under Rule 404(b) in conspiracy cases, the Government failed to thoroughly explain how the evidence in *this* case was relevant to the conspiracy charge against Washington. *See Davis*, 726 F.3d at 441-42 (explaining that relevance can be an "insurmountable" barrier to the admission of evidence challenged under Rule 404(b)).

6

Therefore, there is no way for us to divine the District Court's reasoning as to the second step of the 404(b) inquiry, or to know whether the District Court even conducted the proper analysis. The District Court also erred by not evaluating the evidence under Rule 403, or at least by not explaining its analysis on the record. *Caldwell*, 760 F.3d at 277 ("Under the third step of our analysis, the court must evaluate pursuant to Rule 403 whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence.").[3] Thus, the District Court erred at the second and third steps of the 404(b) analysis, by not explaining at all why the admitted evidence was relevant to its identified purpose or why it was admissible under Rule 403.

**B.**

As with most trial errors, we will only reverse the district court if its errors were harmful. "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). Here, the District Court's error was that it failed to state its reasoning on the record, as it was required to do. The government bears the burden of showing that the error was harmless, which it may do by demonstrating that the defendant was not prejudiced. *See United States v. Olano*, 507 U.S. 725, 734 (1993).

---

[3] Though Washington argues that the court also erred by failing to give a limiting instruction, he did not request one at trial, and the evidence must only be "accompanied by a limiting instruction, *if requested*." *Id*. at 278 (emphasis added). Where a defendant does not request a limiting instruction regarding Rule 404(b) evidence at trial, we review the district court's jury instructions for plain error, and we find none here. *See United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999).

In the context of Rule 403, we have not hesitated to reverse a district court where its reasoning regarding Rule 403 "'is not apparent from the record.'" *United States v. Smith*, 725 F.3d 340, 348 (3d Cir. 2013) (quoting *Sampson*, 980 F.2d at 889). Similarly, in the context of Rule 404(b), we insist that the district court, "rather than the appellate court in retrospect, [must] articulate reasons why the evidence also goes to show something other than character." *Caldwell*, 760 F.3d at 276 (quoting *Sampson*, 980 F.2d at 888) (internal quotation mark omitted). However, here, it is uniquely clear that O'Neal's testimony about his prior dealings with Washington was relevant for the legitimate purpose of establishing a continuing relationship of trust between two coconspirators. Moreover, since the jury could certainly hear evidence of drug sales during the time of the charged conspiracy, O'Neal's testimony about other drug deals was not more prejudicial than probative.

"When evaluating whether a non-propensity purpose is at issue, we consider the material issues and facts the government must prove to obtain a conviction." *United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014) (internal quotation marks omitted). In a conspiracy case where there is a question of whether a defendant is a part of a drug conspiracy or merely a buyer or seller of drugs, courts consider: "[1] the length of affiliation between the defendant and the conspiracy; [2] whether there is an established method of payment; [3] the extent to which transactions are standardized; [4] and whether there is a demonstrated level of mutual trust." *United States v. Gibbs*, 190 F.3d 188, 199 (3d Cir. 1999) (citing *United States v. Hach,* 162 F.3d 937, 943 (7th Cir. 1998), cert. denied, 526 U.S. 1103 (1999)). These considerations were highly relevant at

8

Washington's trial because his main defense was that the evidence only established that he was a simple buyer or seller of heroin and not part of a larger conspiracy.

Throughout his testimony, O'Neal described the interactions between Washington and a number of his co-conspirators, frequently suggesting that Washington was working in concert with others. O'Neal also testified about the unique way Washington packaged his heroin, and the Government ultimately tied Washington to packages of heroin held by his alleged co-conspirators, based in part on O'Neal's testimony that Washington had a long history of packaging heroin in that way.

Where evidence of a prior bad act "undercut[s a defendant's] main defense," it is quite plainly probative of one of the facts the government must prove to obtain a conviction. *United States v. Cross*, 308 F.3d 308, 324 (3d Cir. 2002). Here, the evidence of a prior relationship is highly probative of a key issue: whether Washington had continuous, trusting relationships with other alleged co-conspirators, and whether he worked in concert with them. The second prong of the 404(b) test, relevance, was clearly met. *See Scarfo*, 850 F.2d at 1019. Therefore, Washington was not prejudiced and the District Court's error was harmless.

Moreover, as explained above, the evidence was not unfairly prejudicial. Thus, we are also satisfied that Washington was not prejudiced by the District Court's failure to conduct a Rule 403 analysis on the record. *See Cross*, 308 F.3d at 325 (concluding that evidence of prior bad acts which was "highly probative" because it addressed the defendants' main defense should not be excluded under Rule 403 merely because there was "some risk" of prejudice). It is apparent from the record, if not the District Court's

9

own statements, that the prejudicial effect of that evidence does not outweigh its significant probative value. This error was also harmless.

## III. CONCLUSION

For the above reasons, we will affirm Washington's judgment of conviction.