**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2599
_____

UNITED STATES OF AMERICA

v.

MARCUS JONES, a/k/a J-Rock

Marcus Jones,
                                    Appellant
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(E.D. Pa. No. 2-12-cr-00314-001)
District Judge: Honorable Joel H. Slomsky

Argued: April 9, 2018

Before: CHAGARES, VANASKIE, and FISHER, Circuit Judges.

(Filed: June 11, 2018)

Jeremy C. Gelb        [ARGUED]
834 Chestnut Street
The Benjamin Franklin, Suite 206
Philadelphia, PA 19107
        *Counsel for Appellant*

Louis D. Lappen
        United States Attorney
Robert A. Zauzmer  [ARGUED]
        Assistant United States Attorney
        Chief of Appeals
Katherine E. Driscoll
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellees*

_____

OPINION[*]

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Marcus Jones appeals his conviction by a jury for conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), Hobbs Act robbery in violation of § 1951(a), and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), in relation to an armed robbery. Jones argues that the District Court violated Federal Rule of Evidence 404 by allowing the admission of evidence concerning another robbery that Jones committed and Rule 701 by allowing a lay witness to offer opinion testimony. We disagree, and therefore will affirm.

I.[1]

We write for the parties and so recount only the facts necessary to our decision. Jones was arrested and charged with committing armed robberies of three Philadelphia stores over a ten-day period in March 2012: Peralta Grocery Store, Aya's Pizza, and Golden Kingdom II Restaurant. Maleek Brown and Jonte King were likewise charged with robbing Peralta and Golden Kingdom, and pleaded guilty. Jones pleaded guilty to

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The District Court had jurisdiction under 18 U.S.C. § 3231; this Court has jurisdiction under 28 U.S.C. § 1291.

the Aya's robbery but proceeded to trial on the Peralta and Golden Kingdom robberies. As part of his plea deal, Brown testified that he, King, and Jones robbed Peralta and that Jones had admitted that he (Jones) also robbed Aya's and Golden Kingdom.

At trial, Harold Brokenborough, an Aya's employee working at the time of the robbery, testified that an African-American man wearing a hoodie pulled a gun on the clerk and stole money from the cash register before escaping. He added that he later identified Jones in a photo array. Victor Tejada, Peralta's manager, testified that he was robbed by two African-American men, one of whom wore black shoes with a neon stripe.

The Government also presented the testimony of Philadelphia Police Detective Kert Wilson, who prepared a "Wanted" poster from the Aya's surveillance video and took photos of the clothes Jones was wearing when he was arrested and juxtaposed them to images from the Peralta robbery, to show whether the seized items matched the Peralta robber's clothes.[2] Wilson testified that, in his experience, surveillance videos skew the colors they record, so to better determine whether Jones' shoes matched those in the Peralta video, he walked through Peralta wearing the shoes and compared that video with the robbery video to see if the shoes' coloring appeared the same through the medium of the recording. He said the comparison looked "just spot on." Appendix ("App.") 612.

Jones was convicted of the Peralta robbery but acquitted of the Golden Kingdom robbery. The District Court denied his motion for a new trial and Jones timely appealed.

---

[2] Jones was arrested wearing shoes with a neon yellow stripe and jeans with markings that appeared to match those of the Aya's robber. Police noticed this similarity, and therefore seized the shoes and jeans to compare them to those visible in the video of the Aya's robbery.

## II.

Jones claims that the Government introduced evidence related to the Aya's robbery (which Jones admitted to) in violation of Federal Rule of Evidence 404's prohibition on the use of propensity evidence. Rule 404 prohibits the admission of a defendant's prior crime "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving . . . identity." Id. 404(b)(2). For evidence of past crimes to be admissible under Rule 404(b), it "must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010). "To meet the first requirement for admissibility, the proponents of Rule 404(b) evidence must do more than conjure up a proper purpose — they must also establish a chain of inferences no link of which is based on a propensity inference." United States v. Smith, 725 F.3d 340, 345 (3d Cir. 2013). We review rulings under Rule 404 for abuse of discretion. United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017).

Jones does not challenge the evidence's relevance, and the District Court twice gave the jury limiting instructions, so we consider only the test's first and third prongs.

## A.

The District Court properly allowed the Government to introduce evidence concerning Jones' involvement in the Aya's robbery for two non-propensity purposes: (1) to establish Jones' identity as the Peralta robber and (2) to corroborate the credibility

4

of Brown's testimony identifying Jones as the Peralta robber. See Fed. R. Evid. 404(b)(1); Green, 617 F.3d at 250 (prior bad acts admissible to bolster witness credibility). Jones argues that the evidence nevertheless fails the 404(b) test because a reasonable jury informed that Jones committed another robbery in the timeframe of the charged robberies would infer Jones' propensity to commit robberies, and that the jury here was "invited to draw" that very inference. Jones Br. 20. But this is an objection to Rule 404(b) itself, not its application. See, e.g., Smith, 725 F.3d at 345 (recognizing that "all Rule 404(b) evidence . . . will invite the jury to make inferences about [the defendant's] character" but that "[t]his alone cannot lead to exclusion"). Jones does not claim that any link in the chain of inferences supporting the introduction of the evidence relies on a propensity inference. The Government accordingly established a proper purpose for the introduction of the Aya's evidence, even though the jury could have theoretically drawn improper propensity inferences, as well.

B.

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Before admitting prior bad acts under Rule 404(b), district courts must — explicitly and on the record — "balance the probative value of the proffered evidence against its prejudicial effect under Rule 403." United States v. Caldwell, 760 F.3d 267, 283 (3d Cir. 2014). Where a court "merely recites the text" of Rule 403, we cannot infer that it properly engaged in such balancing, id. at 284, and must reverse unless "it is 'apparent from the record'" that the evidence satisfies Rule 403, Repak, 852 F.3d at 247 (quoting Caldwell, 760 F.3d at 284).

5

Jones generally objects to the introduction of any evidence concerning the Aya's robbery, but specifically focuses on the surveillance video. As to the broader objection, as the Government made clear at oral argument, the probative value of the evidence was substantial, given that it identified Jones as the Peralta robber. The District Court did not abuse its discretion in determining that this value was not substantially outweighed by the risk of unfair prejudice arising from the jury being apprised that Jones committed the Aya's robbery, to which Jones had admitted. Especially given the District Court's two cautionary instructions, which we presume the jury followed,[3] we have little "concern that the jury would have used this evidence to draw a propensity inference." Id.

Whether admitting the surveillance videos, in particular, also satisfies Rule 403, however, presents a closer question. It is a matter of common sense that "probative value is 'informed by the availability of alternative means to present similar evidence.'" United States v. Bailey, 840 F.3d 99, 122 (3d Cir. 2016) (quoting United States v. Awadallah, 436 F.3d 125, 132 (2d Cir. 2006)). At trial, Jones argued that the Government did not need to show any video from Aya's. To support the credibility of Brown, who testified that Jones told him that the Aya's clerk had demanded that Jones remove his hoodie, the Government could have relied on the photos showing Jones in Aya's wearing a hoodie, which had already been admitted into evidence. And to prove that Jones was the Peralta robber, by showing that the Aya's robber (Jones) wore the same distinctive shoes as the

---

[3] This presumption is especially strong because the jury acquitted Jones of the Golden Kingdom robbery, indicating that it followed its instructions and did not draw the propensity inference that, once a robber, Jones was guilty of all the charged robberies.

6

Peralta robber, the Government could have relied on the images and reenactment footage created from the shoes that police had seized from Jones upon his arrest.

Aside from its initial statement that, as a general matter, the "probative value" of the video "would not be substantially outweighed by the danger of unfair prejudice," App. 20, the District Court did not explicitly undertake a Rule 403 analysis in light of Jones' objections. The court's recitation of the legal standard does not indicate that it properly engaged in weighing and so is alone insufficient to warrant our deference. See United States v. Sampson, 980 F.2d 883, 889 (3d Cir. 1992). Nevertheless, the record reflects the District Court's attention to the potential prejudice involved in showing the videos, and we conclude that it did not err by permitting the videos' introduction.

For the purposes of corroborating Brown's testimony, the Government proposed a lengthy clip of Jones entering Aya's, talking with the clerk, jumping over the counter, and robbing the store. The District Court concluded that such a long clip would be "unduly prejudicial . . . especially since the defense has conceded that . . . Mr. Jones did the Aya's robbery," and limited the video to just showing Jones wearing the hoodie and talking to the clerk, which it concluded "does in some way support [Brown's] credibility." App. 402–03. The prejudice from the short video is not materially different than from the images showing Jones in a hoodie. Moreover, the video — which showed Jones talking to the clerk — corroborated Brown's testimony in a way the images did not, by showing that the clerk and Jones spoke. Its admission was proper under Rule 403.

Concerning the clip meant to show Jones' shoes in the Aya's robbery, in light of the defense's argument that it would be prejudicial to show Jones brandishing a gun, the

7

District Court limited the footage to showing Jones' shoes without the gun. Although the clip shown to the jury depicted Jones "vaulting himself up onto the counter," App. 457, and despite our view that identity was equally well established by Detective Wilson's reenactment video or by side-by-side photos of the shoes from each video, we conclude under our own plenary Rule 403 analysis that the unfair prejudice resulting therefrom did not substantially outweigh the video's probative value. First, the footage of Jones jumping over the counter was not "the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime." United States v. Cunningham, 694 F.3d 372, 387 (3d Cir. 2012) (quoting United States v. Loughry, 660 F.3d 965, 972 (7th Cir. 2011)). With the gun redacted, the video showed no violence and thus was unlikely to have any more meaningfully impacted the jury than images taken of Jones while he committed the robbery. Second, as noted, the District Court twice explicitly cautioned the jury against using the evidence to establish Jones' propensity to commit the charged robberies, which further minimizes the risk that the evidence prejudiced Jones. The video's admission was consistent with Rule 403. Thus, neither clip violated Rule 404.

III.

Jones also contends that Detective Wilson twice violated Rule 701 by giving improper opinion testimony that went to the ultimate question. First, Wilson, through an apparent slip of the tongue, identified the suspect in the Peralta surveillance video as "the defendant." App. 606. Second, Wilson seemed to give his opinion that the depiction of

8

the color of Jones' shoes (worn by Wilson) in the Peralta reenactment video matched the color of the shoes worn by the Peralta robber in the surveillance video. We review a trial court's objected-to evidentiary rulings for abuse of discretion, Green, 617 F.3d at 239, and conclude that the District Court did not abuse its discretion by permitting the challenged testimony and that, even if it did, any error was harmless.

Rule 701 permits lay witnesses to testify concerning their opinions to the extent that those opinions are "rationally based on the witness's perception," are "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Lay witnesses accordingly may not opine concerning what conclusions to draw from the facts such that the testimony "usurps the jury's role as fact finder," or offer an opinion which the witness is in no "better position than the jurors to form." United States v. Fulton, 837 F.3d 281, 291–92 (3d Cir. 2016). For that reason, although lay witnesses are not per se barred from expressing opinions that "embrace[] an ultimate issue," such testimony is improper where "its primary value is to dictate a certain conclusion." Id. at 291 (quoting Fed. R. Evid. 704(a)).

Incidental to explaining the purpose of the comparison exhibit he made containing stills from the Peralta video and photographs of Jones' seized clothes, Wilson improperly referred to the content of the Peralta video as depicting the "defendant." Although this statement went to the ultimate issue at trial, it is not fair to say that "its primary value" was to do so. Id. From the perspective of the Government, Wilson's stray remark had no value, given that it was not purposefully elicited and was never repeated. Wilson was not

9

a case agent on the robbery but rather was brought on to recover the videos, and his testimony was elicited for the purpose of laying the exhibits' foundation. His opinions concerning the robber's identity were plainly of little interest to the Government, as evidenced by the Government's failure to repeat any of them in closing. Nor does it appear to have been Wilson's aim to tell the jury that Jones was the Peralta robber. Although the purpose of his exhibits was to present this inference to the jury, it was not his purpose when he remarked that the person in the video was the defendant to "tell the jury what result to reach." Id. at 294 (quoting United States v. Garcia, 413 F.3d 201, 210 (2d Cir. 2005)). Were that his purpose, it would be odd to convey that weighty conclusion layered within a description of the manner of an exhibit's preparation.

Concerning Wilson's remark that the color of the shoes from his reenactment was "just spot on" with the color in the robbery video, the record reflects that the Government immediately clarified that Wilson was not opining about whether the shoes were indeed the same, but just explaining the procedure that he undertook to make the comparison. When the reenactment video was played, the Government again confirmed that the purpose of the comparison "was just to show . . . the color of the shoe?" and Wilson replied that he performed the comparison because "the color represented from what's recorded on the video isn't quite represented in what's in real life." App. 621. Wilson did not thereafter opine about whether Jones' shoes were the ones depicted in the Peralta video. The District Court ruled that Wilson's "testimony doesn't reach the point where he's telling the jury that, in my opinion, [the shoes are] the same," App. 623, and

10

nonetheless gave the jury a limiting instruction that Wilson's testimony was for the purpose of comparison only and that the ultimate decision rested with the jury.

Jones retorts that the sole purpose of Wilson's testimony and the comparison videos he prepared "was [to] tell[] the jury that the items recovered from the Defendant by the police were the same items depicted in the Peralta video." Jones Br. 24. Jones argues that Wilson's testimony "went to the ultimate issue" because his testimony "clearly communicated that the videos he created and the photographs he prepared were done with the purpose of demonstrating to the jury that the shoes and pants recovered from [Jones] by police were the same items depicted in the Peralta video." Jones Br. 25–26. Jones, however, fails to articulate why such a purpose would be improper. Of course, all testimony presented by a party has the purpose of convincing the trier of fact of the correctness of their position. A party may permissibly do so by presenting facts for the jury to consider; they may not — through lay testimony — simply tell the jury what result to reach. Here, in light of the prosecutor's clarifications and the court's limiting instruction, the District Court did not abuse its discretion in concluding that Wilson's testimony did not stray beyond Rule 701's limitations

Regardless, any error was harmless. An erroneous evidentiary ruling "is harmless error when 'it is highly probable that the error did not affect the result.'" United States v. Friedman, 658 F.3d 342, 352 (3d Cir. 2011) (quoting Hill v. Laeisz, 435 F.3d 404, 420 (3d Cir. 2006)). As noted, the first statement was isolated, incidental, and never repeated by the Government, while the second statement was immediately recanted and clarified; the District Court gave a proper limiting instruction; and the Government's case

11

regarding the Peralta robbery was very strong based on cooperating witnesses and video evidence.  We have little doubt that Wilson's comments did not affect the jury's verdict.

## IV.

For the foregoing reasons, we will affirm.