**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2513
_____

UNITED STATES OF AMERICA

v.

JAMES MARK LEROY,
                              Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cr-00243-001)
District Judge:  Hon. Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 11, 2019

Before: SHWARTZ, KRAUSE, and FUENTES, *Circuit Judges*.

(Filed: September 6, 2019)
_____

OPINION[**]
_____


FUENTES, *Circuit Judge*.

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

James Mark Leroy owned a trailer-axle and tire repair shop, where he occasionally hired adolescent boys, often the relatives of his employees, to help with tasks. Two boys, Mike K. and Mikey D., came forward recounting instances of sexual abuse that occurred in Leroy's home and on out-of-state trips paid for by Leroy. Leroy was charged with two counts of travel with intent to engage in illicit sexual conduct[1] and two counts of transportation with intent to engage in criminal sexual activity.[2] After a three-day trial, Leroy was found guilty and was sentenced to thirty years' imprisonment on each count, to be served concurrently. Leroy brought this appeal, arguing that he was entitled to a new trial. For the following reasons, we will affirm Leroy's judgment of conviction.

## I.[3]

On appeal, Leroy raises six arguments, all of which we find to be meritless. We briefly address each issue.

## A.

First, Leroy argues that his rights under the Due Process Clause were violated when the Government failed to correct testimony by one of its witnesses, Amanda (Mike K.'s stepmother), about whether or not she sought help from Mike K. in disposing of drugs and drug paraphernalia. Leroy moved to strike the entirety of Amanda's testimony, and the Government responded that the federal agent who attended the meeting with Amanda

---

[1] 18 U.S.C § 2423(b), (e).
[2] *Id.* § 2423(a), (e).
[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

would testify and Leroy could examine him to "clarify what happened before the jury."[4] The District Court agreed that it would wait until after the agent's testimony to make a decision. The agent could not recall being at a meeting in which Amanda said that she and Mike K. got rid of the drugs together, and therefore offered no substantive clarification. Leroy's motion was renewed, and the District Court denied the motion, concluding that a *falsus in uno, falsus in omnibus* charge would be sufficient.

To establish a due process violation, Leroy must show that: "(1) [Amanda] committed perjury; (2) the Government knew or should have known of [Amanda's] perjury; (3) [Amanda's] testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict."[5] "'[W]hen it should be obvious to the Government that the witness'[s] answer, although made in good faith, is untrue,' it has an obligation to correct that testimony."[6]

In *United States v. Stadtmauer*, we faced a nearly identical situation and explained that "there was no way for the prosecutor to know whether [the witness] was giving false testimony" because the prosecutor did not have "personal knowledge that the witness's answers were not correct."[7] For the same reason, Leroy has not met his burden here. The

---

[4] A. 538.

[5] *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008).

[6] *United States v. Stadtmauer*, 620 F.3d 238, 268 (3d Cir. 2010) (quoting *United States v. Harris*, 498 F.2d 1164, 1169 (3d Cir. 1974)).

[7] *Id.* at 268–69 (citing *Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991) ("Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an interference, let alone prove, that the prosecution knowingly presented perjured testimony.")).

3

prosecutors had no personal knowledge about whether Amanda asked Mike K. to help dispose of his father's drug paraphernalia; they only recalled her saying so in a meeting.

Notwithstanding Leroy's failure to show perjury, Leroy has also failed to show that the Government's actions—asking Amanda about the incident and then disclosing to the District Court that the prosecutors had a different recollection of the meeting—were unconstitutional. In *Lambert v. Blackwell*, we explained that while a prosecutor must "fully and openly inform[] the Court" when she believes testimony is untruthful, she is under no obligation "to characterize the entirety of the testimony as perjury [or] to withdraw the witness."[8] We explained that a witness who gives false testimony "in one area" is not incompetent to testify overall and that striking the entire testimony of a witness, even if that witness fabricated some testimony, is not constitutionally required.[9] Thus, the Government's opposition to Leroy's motion to strike, and the Court's denial of the motion, did not deprive Leroy of his due process rights.

**B.**

Second, Leroy argues that his Sixth Amendment right to counsel, his Fifth and Sixth Amendment right to be present, and his rights under Federal Rule of Criminal Procedure 43 were violated when a courtroom deputy communicated with a juror outside the presence of counsel. Before the jury was seated on the second day of trial, and before Leroy himself arrived, the Government explained that it observed a conversation between one juror and the courtroom deputy, during which the juror was tearful. The Court explained that it had

---

[8] 387 F.3d 210, 255–56 (3d Cir. 2004).
[9] *Id.* at 256.

4

"dealt with [the Juror] and she's aware she needs to continue."[10] Leroy's attorney, who was present, did not request further information about the conversation with the juror and did not object to the conversation. We review for plain error.[11]

Under plain error review, we may correct only "(1) an error (2) that was plain—i.e., 'clear or obvious, rather than subject to reasonable dispute'—and (3) that 'affected the appellant's substantial rights'—i.e., there is 'a reasonable probability' that it affected the outcome of the proceedings."[12] Even then, we may correct only errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings."[13]

Assuming that it was error for Leroy and his counsel to be excluded from the conference,[14] Leroy cannot show that his exclusion affected his substantial rights. Leroy argues that the deprivation of the right to counsel is a structural issue that necessarily caused prejudice.[15] But in *United States v. Toliver*, we explained that deprivation of the right to counsel does not always mandate automatic reversal.[16] We instead look to the type

---

[10] A. 359.

[11] Leroy argues that plain error review is inappropriate because he did not have any opportunity to object before the courtroom deputy spoke with the juror outside the presence of counsel. Nevertheless, we have used the plain error standard of review before when a defendant "did not raise a contemporaneous objection when he [later] became aware" of the troubling conduct. *United States v. Brown*, 595 F.3d 498, 520 (3d Cir. 2010).

[12] *United States v. Johnson*, 899 F.3d 191, 200 (3d Cir. 2018) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

[13] *Id.* (alteration omitted) (quoting *Marcus*, 560 U.S. at 265).

[14] We note, however, that in general "the mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Rushen v. Spain*, 464 U.S. 114, 125–26 (1983) (Stevens, J., concurring in judgment)).

[15] Leroy does not argue that his own absence from the conference affected his substantial rights.

[16] 330 F.3d 607, 613–14 (3d Cir. 2003).

of *ex parte* communication that occurred.[17]  Leroy claims that the conversation between the juror and the deputy "created the potential that a juror with bias or predisposition was seated on the jury."[18]  But there is no indication in the record that the juror was speaking to the deputy about bias or predisposition.  Instead, the District Court implied that her "situation" was personal by noting that it was "much less" than that of another juror, who had a personal issue that prevented her attendance at trial.[19]  The mere fact that the juror was tearful does not establish that counsel's absence from her discussion with the deputy affected Leroy's substantial rights.  We therefore reject this argument.

## C.

Leroy also argues that the District Court abused its discretion by allowing the Government's expert, Dr. Veronique Valliere, to testify.  Dr. Valliere is a clinical and forensic psychologist who has treated hundreds of victims of abuse and thousands of offenders.  She testified about common behaviors of child sexual-abuse victims and common techniques of abusers.  Leroy argues that Dr. Valliere's testimony was not based on reliable principles and methods, was not the type of testimony for which expertise was needed, and was more prejudicial than probative.

We agree with the District Court that Dr. Valliere's testimony was reliable and relevant.  Dr. Valliere has extensive academic experience in the field of psychology, and her robust clinical and forensic practice involves a similar patient population of sexual

---

[17] *See, e.g.*, *United States v. Bertoli*, 40 F.3d 1384, 1399 (3d Cir. 1994) (determining that counsel's absence during *ex parte in camera* interviews was not prejudicial).

[18] Appellant's Br. at 51.

[19] A. 359.

offenders and child abuse victims, which we find to be sufficient for the purposes of Rule 702 in this case.[20] Her testimony was relevant because it assisted the jury in learning about specialized topics—for example, she explained that the most significant factor in whether a victim comes forward is his relationship to the offender, that the use of alcohol or drugs can shame the victim into feeling he cannot come forward, and that many offenders ingratiate themselves to child victims by allowing victims to "act more grown up around them."[21]

Finally, we reject Leroy's argument that the District Court did not conduct a balancing test under Rule 403 of the Federal Rules of Evidence before admitting Dr. Valliere's testimony. First, Leroy's motion to exclude Dr. Valliere's testimony was limited to Rule 702 and did not mention Rule 403. Second, even if this issue were properly raised, we are not convinced by Leroy's arguments that Dr. Valliere's testimony constituted unfair vouching or bolstering of the victims. The fact that the jury may have drawn comparisons

---

[20] *See Elcock v. Kmart Corp.*, 233 F.3d 734, 745–46 (3d Cir. 2000) (explaining that in determining whether an expert's testimony is reliable, we consider, *inter alia*, "the qualifications of the expert witness testifying based on the methodology" and "the non-judicial uses to which the method has been put" (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994))).

[21] A. 380. We also place no stock in Leroy's argument that because there have been recent child sex-abuse scandals in the past several years, the District Court should have assumed that all jurors would understand that child sex-abuse commonly occurs at the hands of men in positions of trust and privilege. *See United States v. Batton*, 602 F.3d 1191, 1201 (10th Cir. 2010) (finding that expert testimony sharing "that sex offenders are generally not strangers to their victims and their families but are more often than not close family members, friends, or well-respected individuals in a community who often use their positions to groom their victims into trusting them" was admissible); *see also United States v. Kirkie*, 261 F.3d 761, 766 (8th Cir. 2001) (admitting expert testimony into the characteristics of sexually abused children).

between Leroy's relationships with Mike K. and Mikey D. and the relationships Dr. Valliere described does not make the latter's testimony unduly prejudicial. Third, the District Court concluded that it could "see nothing in [Dr. Valliere's] proposed testimony that would be unduly prejudicial to [Leroy] and the probative value outweighs the prejudicial effect under Rule 403," as her testimony would "assist the jury because many jurors are at a disadvantage when dealing with sexual abuse of children."[22] This analysis satisfies the Rule 403 balancing test.[23]

## D.

Leroy's remaining arguments fare no better. Fourth, Leroy argues that the District Court unconstitutionally limited his ability to conduct juror *voir dire* by rejecting specific *voir dire* questions he proposed. Because Leroy did not object at the time, we review for plain error. Here, we see no plain error, because the District Court did not "bar[] all inquiry into a relevant *subject matter* designed to elicit a disqualifying prejudice"[24] and conducted a "basically adequate" *voir dire*.[25]

Fifth, Leroy argues that the District Court abused its discretion by denying his untimely motion for a new trial. While some courts have excused late filed motions for

---

[22] A. 24.

[23] *Cf. United States v. Smith*, 725 F.3d 340, 348 (3d Cir. 2013) (holding that a district court's analysis was "insufficient" and its reasoning "not apparent from the record," where the court described the evidence as "significantly prejudicial" and then concluded that it was "not unfairly prejudicial" without addressing the probative value of the evidence).

[24] *Butler v. City of Camden, City Hall*, 352 F.3d 811, 816 (3d Cir. 2003).

[25] *United States v. Urian*, 858 F.2d 124, 127 (3d Cir. 1988). Indeed, the *voir dire* questions used by the District Court elicited responses from two jurors who revealed themselves to be unable to serve impartially due to their opinions on child sex-abuse cases.

ineffective assistance of counsel,[26] Leroy has not pointed to any cases in which we have found a district court abused its discretion by choosing not to consider such a motion. There is little reason to do so here, when the District Court also rejected Leroy's motion on the merits, correctly concluding that ineffectiveness claims are better raised in collateral proceedings.[27]

Sixth, Leroy argues that the District Court abused its discretion by allowing testimony pertaining to a plan to film Mike K.'s drug use.[28] The Government's theory at trial was that Leroy enlisted a minor named Matthew to entice Mike K. to use drugs and film the encounter, which would discredit Mike K.'s allegations. We agree with the Government and with the District Court that evidence that Leroy was actively attempting to undercut the credibility of his accusers by inducing them to partake in illegal activities

---

[26] *See United States v. Munoz*, 605 F.3d 359, 369–73 (6th Cir. 2010); *United States v. Washington*, 184 F. Supp. 3d 149, 155 n.2 (E.D. Pa. 2016), *aff'd in part and vacated in part* 869 F.3d 193 (3d Cir 2017).

[27] *See Washington*, 869 F.3d at 202 (observing that ineffective assistance of counsel claims are generally not considered on direct appeal and are more commonly brought in collateral proceedings).

[28] As a preliminary matter, Leroy argues that the District Court erred because its written decision allowing Matthew's testimony on the subject was "a nearly verbatim copy of the [G]overnment's submission." Appellant's Br. at 99. While the District Court's opinion hewed closely to the Government's brief, "a district court's verbatim adoption" of a party's argument "although highly disapproved of, is not *per se* grounds for reversal" so long as the court exercised independent judgment in adopting the argument. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005). We are satisfied that District Court's opinion as a whole demonstrated independent judgment and analysis. We note that the District Court did not simply rubber stamp the Government's arguments, as it granted one of Leroy's motions *in limine*.

is relevant to Leroy's consciousness of guilt.[29]  We therefore conclude that the District Court did not abuse its discretion by permitting the testimony.

## II.

For the foregoing reasons, we will affirm.

---

[29] *See United States v. Kemp*, 500 F.3d 257, 296–97 (3d Cir. 2007) (concluding that evidence a defendant lied about his wealth could show consciousness of guilt in a pension fraud case and was admissible under Rule 404(b)).