NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3468
_____

UNITED STATES OF AMERICA

v.

ROBERT G. WRAY, a/k/a Robert Mac Wray,
a/k/a Robert-George Wray, a/k/a Robert-George Wray of the Christ Clan
a/k/a Robert-George of the Wray Clan, a/k/a Robert Wray, a/k/a Robert George

Robert G. Wray,
                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cr-00504-001)
District Judge: Honorable Jeffrey L. Schmehl
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 4, 2016

Before: CHAGARES, HARDIMAN, and SCIRICA, *Circuit Judges*.

(Filed: November 4, 2016)
_____

OPINION*
_____

_____

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Robert Wray appeals his judgment of conviction for wire fraud, bankruptcy fraud, failure to appear, and conspiracy to defraud the United States following a jury trial. Wray claims the District Court erred in admitting evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. We will affirm.

I

Wray's conviction was brought about by his association with Dennis Fluck, a medical doctor who defaulted on loans he received from the U.S. Department of Health and Human Services in the 1980s. After obtaining a judgment against Fluck, HHS was unable to collect its debt for many years because it could not locate Fluck, who had changed his name to Dennis Erik Von Kiel. In 2007, HHS finally located Fluck and attempted to garnish his wages.

Soon after HHS filed a writ of garnishment in federal court indicating that "Von Kiel" owed $182,365.96, outside counsel to Fluck's employer received a letter from "Robert mac Wray, Attorney-at-lawe" claiming that Fluck's wages were being illegally garnished by the "United States Federal Corporation's Justice Department" and that those wages actually belong "to the Church." App. 199–202. Wray also filed dozens of documents in HHS's federal civil suit against Fluck—all of which were signed by "Robert mac Wray" and many of which designated Wray as "attorney at lawe." Though

2

HHS prevailed in that case in April 2010, Fluck quickly filed for bankruptcy to stay all debt collection efforts.

Wray's efforts on behalf of Fluck continued as he filed numerous documents with the bankruptcy court and even listed himself as a co-plaintiff on one of Fluck's claims. After the bankruptcy judge dismissed Wray from the proceedings, Wray changed his *nom de plume* from Robert mac Wray to "Robert: Wray" and continued filing fraudulent documents. One such document—the "Bill of Exchange"—stated: "Standing in Honor, I Robert, Trustee of the charged defendant remit to the Internal Revenue Service a Bill of Exchange in settlement of this Public debt, extinguishing it from the Public Record." App. 503.

During the pendency of the bankruptcy proceedings, Wray also helped Fluck avoid federal taxes. When Fluck was first hired by his employer in 2005, he indicated on IRS forms that he was a "trust" exempt from federal taxes instead of an individual. As a result of this ruse, Fluck neither paid income taxes nor filed tax returns despite the fact that his annual wages often exceeded $200,000 between 2005 and 2013. Wray entered this scheme in 2011. The basic arrangement was this: Fluck told his employer to send his wages to a Utah bank account belonging to a sham religious entity for which Wray was the signatory, then Wray would transfer those same funds, minus a fee of some $240, back to an account in Pennsylvania belonging to a second sham religious entity for which

Fluck was the sole trustee. Wray participated in this scheme from February 2011 until October 4, 2013.

Wray was charged with wire fraud and bankruptcy fraud in 2014. Prior to trial, the Government filed a motion in limine expressing its intent to offer the testimony of Victor Balletta and Michael Reis pursuant to Rule 404(b) of the Federal Rules of Evidence. The crux of the Government's proffer was that Balletta would testify that Wray knew that Fluck was not paying taxes and Reis would testify that Wray had authored documents similar to those he had created for Fluck. Wray opposed their testimony as impermissible character evidence. The Government countered that the testimony would establish Wray's knowledge, intent, modus operandi, and identity. After a hearing, the District Court granted the Government's motion. Wray now appeals this decision.

## II[1]

We review the District Court's evidentiary ruling for an abuse of discretion. *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014).

Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence can be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan,

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 because Wray was charged with federal crimes. We have jurisdiction over this matter under 28 U.S.C. § 1291.

knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

And the evidence must be: "(1) offered for a proper purpose under Rule 404(b)(2); (2)

relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing

requirement; and (4) accompanied by a limiting instruction, if requested." *United States v.*

*Steiner*, 815 F.3d 128, 135 (3d Cir. 2016). We shall apply these legal precepts to

determine the admissibility of the trial testimony of Balletta and Reis.

A

Balletta testified that Fluck introduced him to Wray so that Wray could assist

Balletta's struggling business. Over the course of several phone conversations, Wray

advised Balletta about becoming a sovereign citizen, *i.e.*, one who was allowed "legally

not to pay income tax." App. 616. Wray also told Balletta that Fluck was a sovereign

citizen and "wasn't paying any taxes." *Id.*

Wray argues that this testimony was not relevant to a material fact at issue.

Specifically, he contends that "knowledge that [Fluck] was not paying taxes is not

relevant to demonstrate that [Wray] participated and assisted [Fluck]." Wray Br. 14. Wray

mistakenly conflates relevance with guilt. Although Balletta's testimony does not prove

Wray's guilt, as the Advisory Committee has explained, "a brick is not a wall." Fed. R.

Evid. 401 (advisory committee notes); *see also id.* (explaining that evidence is relevant if

it has any tendency to make a fact of consequence more or less probable). Balletta's

testimony made it more likely that Wray knew of Fluck's scheme to avoid taxes and

5

assisted him. And it tended to weaken Wray's claim that "he had no knowledge of the purpose of why [Fluck] had set up this two-step plan." App. 48. Accordingly, Balletta's testimony was relevant.

B

Reis testified that Wray helped him perform a "name restoration." App. 630. According to Wray, if Reis changed his name from capital to lower-case letters and inserted a colon between his surname and given name, Reis would be "protecting [his] name from any lawsuits." App. 631. In addition to Reis's testimony, the Government introduced several documents Wray created to perform this "name restoration." Those documents bore many of the same hallmarks as the "Bill of Exchange" and the other fraudulent documents submitted during Fluck's bankruptcy proceeding. For example, both sets of documents included names separated by a colon ("Robert: Wray" and "Michael John: Reis") and the peculiar misspelling of "lawe." App. 633–34; Supp. App. 240–41.

Wray argues that because he did not perform these same "name restoration" services for Fluck, Reis's testimony "did not make it more probable that [Wray] engaged in unlawful activities to assist [Fluck] in avoiding paying income taxes or filing false documents with the bankruptcy court." Wray Br. 15. We disagree.

Wray's argument ignores a key function of Reis's testimony: proving Wray's identity as the author of the "Bill of Exchange." App. 49. Given the similarities between

the documents, Reis's testimony regarding Wray's handiwork on the "name restoration" documents makes it more likely that Wray authored the "Bill of Exchange." For that reason, Reis's testimony was relevant.

C

Having explained the relevance of Balletta's and Reis's testimony, we turn to Wray's argument that it should have been excluded in any event. According to Wray, "any potential probative value of [the challenged testimony] was outweighed by its prejudicial effect under Rule 403." Wray Br. 15. In support of this argument, Wray merely rehashes his claim that the testimony was not relevant. We have already explained why that argument is incorrect. *See supra* Part (II)(A)–(B). Moreover, the District Court instructed the jurors as to the limited purposes for which they were to consider the evidence. *See United States v. Gaev*, 24 F.3d 473, 478 (3d Cir. 1994) (explaining that we have in many cases found that "proper limiting instructions from the court cured the possible prejudice to the defendant" (citations omitted)). Without more, Wray falls far short of showing that the District Court abused its discretion when it granted the Government's motion in limine.

\*     \*     \*

For the reasons stated, we will affirm the District Court's judgment.