**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1339
_____

UNITED STATES OF AMERICA

v.

TIMOTHY STREITMATTER,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-22-cr-00089)
District Judge: Honorable Robert D. Mariani
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 7, 2024

Before: JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Opinion filed: April 26, 2024)

_____

OPINION*
_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

A jury convicted Timothy Streitmatter of attempted online enticement of a minor to engage in sexual activity and sex trafficking of a child under the age of fourteen. On appeal, Streitmatter challenges the admission of his internet activity during the week before his arrest. For the reasons that follow, we will affirm the District Court's judgment.

I

On the evening of March 3, 2022, Streitmatter was exploring prostitution websites from an apartment in Shillington, Pennsylvania. He viewed an advertisement captioned "Looking for Something Fresh?" App. 480. The advertisement featured photos of a young-looking female whose face was turned away from the camera, and it offered several explicit sexual services.

Streitmatter responded to the advertisement. Unbeknownst to him, the advertisement was a part of an FBI sting, and an undercover FBI agent replied to his text. The agent told Streitmatter that the advertisement was for her 13-year-old niece. Streitmatter requested a picture, and the "aunt" sent him a headshot of what appeared to be an underage girl. (It was a digitally altered image of an FBI agent). Streitmatter continued to exchange text messages with the "aunt," who made clear that her niece would provide sex in exchange for money. The "aunt" asked Streitmatter to prove he was not a police officer, and he sent her a picture of his bare leg soaking in a bathtub. Streitmatter reciprocated by asking the "aunt" to send a full-body picture of her niece "showing something" so he would know the "aunt" was not a police officer. App. 307–

09. The "aunt" responded by sending a picture of what appeared to be a girl in her underwear laying on a bed with a pillow over her face. (It was actually a photo of a forensic doll). Streitmatter then requested to speak with the girl, and another agent pretended to be the girl and had a brief telephone conversation with him. The "aunt" then came back on the line and reminded Streitmatter that her 13-year-old niece would provide sexual services for $100 per hour.

Streitmatter arranged to meet the girl that evening in Pottsville, Pennsylvania. On his way to the meeting place, he stopped at a gas station and withdrew $200 from an ATM. When he arrived at the meeting place, he left his cell phone and wallet in his vehicle but took the $200 cash with him. Law enforcement arrested him as he approached the two undercover agents who were playing the roles of the aunt and the niece.

Streitmatter waived his *Miranda* rights and agreed to be interviewed by FBI agents. He told them that he traveled to Pottsville because he was concerned that someone was exploiting a child, and he wanted to get the perpetrator's address so he could call the police. The FBI searched his cell phone and saw that, in the week before his arrest, he ran internet searches for the phrases "Preteen model," "Tween Bikini," and "Older for younger porn," and he accessed images of young girls in bikinis. App. 183–85. Also, on the day before his arrest, he accessed a video on Pornhub.com titled "Grandpa greets teen lover in his towel." App. 185. (Collectively, we refer to the internet searches, the images, and the video as the "cell phone evidence.")

Streitmatter was charged with attempted online enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and attempted sex trafficking of a child who had not yet reached the age of fourteen, in violation of 18 U.S.C. § 1594(a). He pled not guilty and proceeded to trial.

During his opening remarks to the jury, Streitmatter's counsel explained the defense's theory: that Streitmatter lacked "any intent to engage in sexual activity with this 13-year-old." App. 101. Counsel said Streitmatter "really idolized vigilante justice figures" and that on the date in question he had the "intent to help a possible victim and not to victimize." App. 101–02. He posited that "the question that divides guilt from innocence in this case [is] Mr. Streitmatter's intent." App. 101.

Shortly after counsel's opening, the District Court granted the government's pre-trial motion for leave to introduce the cell phone evidence. The Court explained that Streitmatter put his intent at issue by suggesting "that all of his actions, including getting in his car and driving to Pottsville, were for a praise-worthy purpose of stopping the exploitation of a child." App. 104. Therefore, it concluded that the cell phone evidence was admissible under Federal Rule of Evidence 404(b) to prove intent.

After the government presented its case, Streitmatter testified in his own defense. He contended that he responded to the advertisement and travelled to Pottsville to rescue an exploited child. He said he did not call the police to report his concerns for the child because he needed proof of the exploitation—proof that he sought to obtain when he arrived in Pottsville. He denied noticing the option to report the original advertisement on the website.

4

During its closing arguments, the government asserted that Streitmatter was guilty and "was pre-disposed to engaging in sexual activity with a minor on March 3, 2022." App. 254. The government also referenced the internet searches and argued, "Those searches shine a clear light into his mind. . . . Those searches reveal a man who had a sexual interest in little girls." App. 260. The Court overruled Streitmatter's objections to these arguments. It instructed the jury that it could consider the cell phone evidence only to decide whether Streitmatter "had the state of mind, knowledge, motive or intent" to commit the crimes charged—not as evidence of his propensity to commit the charged crimes. App. 267.

The jury convicted Streitmatter on both counts. The Court sentenced him to 180 months' imprisonment.

## II[1]

Streitmatter argues that his conviction should be vacated because the cell phone evidence was inadmissible under Rule 404(b). We review a district court's evidentiary rulings for abuse of discretion, and its interpretation of the Federal Rules of Evidence *de novo*. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010).

"Rule 404(b) directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017) (quoting *United States v.*

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

*Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)).  Admission of evidence under Rule 404(b)

is a four-step process: (1) the government must proffer the evidence for a non-propensity

purpose; (2) the evidence must be relevant to the proffered non-propensity purpose;

(3) its probative value must not be substantially outweighed by its potential for causing

unfair prejudice to the defendant; and (4) the court must give a limiting instruction if the

defense requests one.  *Id.* at 241 (citing *Huddleston v. United States*, 485 U.S. 681, 691

(1988); *Caldwell*, 760 F.3d at 277–78).[2]

At step two, the government and the trial court must articulate "a logical chain of

inferences connecting the evidence to a non-propensity purpose."  *Caldwell*, 760 F.3d at

282.  "This chain must be articulated with careful precision" so that "we are assured that

the evidence is not susceptible to being used improperly by the jury."  *Repak*, 852 F.3d at

243 (cleaned up).

Step three also requires an on-the-record analysis.  A trial court must apply Rule

403 of the Federal Rules of Evidence and conduct a "meaningful balancing" of the

probative value of the evidence weighed against the risk of unfair prejudice.  *Id.* at 246

(quoting *Caldwell*, 760 F.3d at 283).

Streitmatter's Rule 404(b) arguments are twofold.  First, he argues that the

government and the District Court failed to articulate a logical chain of non-propensity

inferences.  He contends that the government's comments in closing—that Streitmatter

---

[2] In a criminal case, the government also must provide pretrial notice of its intent to introduce prior bad acts evidence.  Fed. R. Evid. 404(b)(3).

was predisposed to engaging in sexual activity with a minor and that his internet searches demonstrate his sexual interest in little girls—demonstrate that the cell phone evidence was introduced for an improper purpose. Second, he argues that the District Court failed to explain how the probative value of the cell phone evidence was not substantially outweighed by its potential to cause him unfair prejudice.

Streitmatter's point about the lack of an on-the-record Rule 403 analysis is well taken. Nonetheless, we need not decide whether the District Court abused its discretion by admitting the cell phone evidence because any error was harmless. Even without the cell phone evidence (and the government's closing arguments invoking that evidence), there was overwhelming evidence of Streitmatter's guilt. The uncontested evidence showed that he responded to an advertisement for sexual services from a young-looking female described as "fresh"; after he learned the advertisement was for a 13-year-old girl, he requested to see a photo of the girl's full body with her "showing something"; on his way to meet the girl, he withdrew $200 in cash—an amount that would cover two hours of the girl's sexual services; during all this, he never alerted authorities to the exploitation of a child; and when he arrived at the predetermined meeting place, he took the $200 with him but left his cell phone in his vehicle, rendering him unable to report the child's location to the authorities. Given all this, we have a "sure conviction" that any Rule 404(b) error did not prejudice Streitmatter. *United States v. Steiner*, 847 F.3d 103, 113 (3d Cir. 2017) (quoting *Caldwell*, 760 F.3d at 285).

\*　　\*　　\*

For the foregoing reasons, we will affirm the District Court's judgment.